Filed 4/6/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JESUS LOPEZ<br><br>   on Habeas Corpus. | G051238<br><br>(Super. Ct. No. 04CF2780)<br><br>O P I N I O N |

Original proceedings; petition for writ of habeas corpus after a judgment of the Superior Court of Orange County, Richard M. King, Judge. Petition granted. Conviction for first degree murder vacated and matter remanded with directions.

Jesus Lopez, in pro. per.; and Eric R. Larson, under appointment by the Court of Appeal, for Petitioner.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Lynne G. McGinnis, Deputy Attorneys General, for Respondent.

# INTRODUCTION

A jury in 2008 convicted Jesus Lopez (Petitioner) of one count (count 1) of first degree murder (Pen. Code, § 187, subd. (a)) and one count (count 2) of street terrorism (*id.*, § 186.22, subd. (a)). As to count 1, the jury found true a vicarious firearm use enhancement (*id.*, § 12022.53, subds. (d), (e)(1)) and a criminal street gang enhancement (*id.,* § 186.22, subd. (b)(1)). Petitioner was 17 years old at the time of the offenses. The trial court sentenced Petitioner to a term of 50 years to life in prison. We affirmed the conviction and sentence in *People v. Lopez* (Apr. 20, 2010, G040350) (nonpub. opn.).

By petition for writ of habeas corpus, Petitioner challenges his sentence of 50 years to life. He seeks relief based on two claims: (1) under *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), his first degree murder conviction must be vacated because it was based on the natural and probable consequences doctrine and (2) his 50-year-to-life sentence is unconstitutional under *Miller v. Alabama* (2012) 567 U.S. __ [132 S.Ct. 2455] (*Miller*). As a remedy for the first claim, Petitioner asks for relief from the first degree murder conviction with the prosecution given the choice of accepting a reduction to second degree murder or retrying the murder charge. As a remedy for the second claim, Petitioner asks for an order that resentencing comport with *Miller* and other United States Supreme Court and California Supreme Court authority.

We hold *Chiu* is retroactive to convictions, such as Petitioner's, that were final on appeal when *Chiu* was decided. We also conclude Petitioner is entitled to relief because the record shows his conviction for first degree murder was based on the natural and probable consequences doctrine impermissible under *Chiu*. We therefore grant relief and vacate Petitioner's conviction for first degree murder. On remand, the People may accept a reduction of the conviction to second degree murder or elect to retry the greater offense. (*Chiu*, *supra*, 59 Cal.4th at p. 168.) In light of our decision on Petitioner's first

claim, Petitioner's second claim is moot or not yet ripe for adjudication.[1] We note that in *Montgomery v. Louisiana* (2016) 577 U.S. __ [136 S.Ct. 718], the United Supreme Court held that *Miller* applies retroactively to state convictions on collateral review.

## FACTS AND PROCEDURAL HISTORY

### I.

### Facts

We draw the facts from our prior unpublished opinion, *People v. Lopez*, *supra*, G040350.

In August 2004, Petitioner and his codefendant, Francisco Jose Lopez (Francisco Lopez), who were both members of a territorial criminal street gang named F-Troop, met at a park with three other F-Troop members and a man who belonged to an affiliated street gang. The park was within F-Troop's claimed territory. Francisco Lopez displayed a handgun and told the others, "we have a gun . . . if something happens." The group left the park on bicycles and were followed by a truck carrying several other people. The group first traveled to the home of a fellow F-Troop gang member and then went to an intersection located either in or on the border of an area claimed by a rival street gang named West Myrtle. An eyewitness testified, "a minimum of 50" people "on bicycles" and "walking" were around the intersection at the time.

Petitioner and the other bicyclists saw a car driven by Pedro Javier Rosario, who was wearing a muscle T-shirt and sporting tattoos. The bicyclists hailed him and surrounded his car when it stopped at a stop sign. Both Petitioner and Francisco Lopez approached the driver's side window and, while straddling his bicycle, Francisco asked, "[w]here [are you] from." Rosario said something and began to slowly drive away. Francisco pulled out the handgun, aimed at the car, and, after a couple of seconds, fired

---

[1] Our disposition in this matter does not affect Petitioner's conviction and sentence on count 2, which Petitioner did not challenge in the prior appeal.

the weapon.  The bullet shattered the car's back window and struck Rosario in the back of the head, killing him.  The bicyclists and truck fled the scene.  Petitioner was 17 years old at the time.

Details of the respective roles of Francisco Lopez and Petitioner in the murder were supplied at trial by the testimony of Louis Perez, a former member of the F-Troop gang, who witnessed the murder and testified as a prosecution witness.  Perez testified that Francisco Lopez had a gun and that, while at the park before the murder, pulled the gun out of his waistband and showed it "to us," which included Petitioner.  Francisco Lopez said something to the effect of, "we have a gun around, so if something happens, you know"; however, Perez testified that nobody was expecting anything to happen that day.  Perez testified that Francisco Lopez "pulled the trigger."  When asked if anybody else was at the scene, Perez testified, "Jesus Lopez and a few other[s] of us."  According to Perez, only Francisco Lopez touched the gun that day.  Perez testified he was acting as backup, and it was important that he did so.  About a week after the shooting, another witness, Edward Reyes, prepared a diagram in which he placed each of the participants.  On the diagram, Petitioner is marked as being next to Francisco Lopez.

## II.

### Trial Court Proceedings

Petitioner was jointly tried with Francisco Lopez for the first degree murder of Rosario.  The prosecution presented the jury with three alternative legal theories for convicting Petitioner:  (1) Petitioner directly aided and abetted the murder, (2) Petitioner aided and abetted the target crime of disturbing the peace and the subsequent murder was a natural and probable consequence of disturbing the peace, and (3) Petitioner conspired to disturb the peace and the subsequent murder was a natural and probable consequence of the conspiracy.  The jury was instructed it could convict Petitioner of first degree

4

murder under the natural and probable consequences doctrine either as an aider and abettor or as a coconspirator.

The jury found Petitioner guilty of the first degree murder of Rosario (count 1) and street terrorism (count 2). On count 1, the jury returned true findings of discharging a firearm proximately causing death (Pen. Code, § 12022.53, subds. (d) & (e)(1)), and the crime was committed for the benefit of or in association with a criminal street gang (*id.*, § 186.22, subd. (b)(1)). The jury returned a general verdict and did not identify the theory under which it found Petitioner guilty of murder.

The trial court sentenced Petitioner to a total prison term of 50 years to life, consisting of 25 years to life on count 1 (first degree murder) and a consecutive term of 25 years to life for the firearm enhancement, with a concurrent two-year term on count 2 (street terrorism). A panel of this court affirmed the judgment against Petitioner in *People v. Lopez, supra*, G040350. The California Supreme Court denied Petitioner's petition for review.

### III.

### Habeas Corpus Proceedings

In January 2015, Petitioner, who was self-represented at the time, filed a petition for writ of habeas corpus in this court. We issued an order to show cause directing respondent to file a return. Counsel was appointed to represent Petitioner, and counsel filed an amended petition asserting two claims for habeas corpus relief: (1) Petitioner's murder conviction was unlawfully obtained under the natural and probable consequences doctrine and (2) Petitioner's sentence constitutes cruel and unusual punishment under the United States Constitution and the California Constitution. In response to the amended petition, respondent filed an amended return, to which Petitioner filed a traverse, thereby joining the issues for review.

5

After the traverse was filed, respondent filed a request to file a letter brief addressing the issue whether *Chiu* has retroactive application to convictions, such as Petitioner's, that became final on appeal before that decision was issued. We granted the request and, at our invitation, Petitioner filed a letter brief in response to respondent's letter brief. After *Montgomery v. Louisiana*, *supra*, 577 U.S. __ [136 S.Ct. 718], was issued, we invited the parties to submit letter briefs addressing the effect of that opinion on these issues: (1) whether *Chiu, supra,* 59 Cal.4th 155, applies retroactively to convictions that were final on appeal when *Chiu* was decided and (2) whether *Miller*, *supra*, 567 U.S. __ [132 S.Ct. 2455], applies retroactively to Petitioner's conviction and sentence. Petitioner and respondent each filed a letter brief.

## DISCUSSION

### I.

### *Chiu* Is Retroactive.

In *Chiu*, *supra*, 59 Cal.4th at pages 158-159, the California Supreme Court held an aider and abettor may not be convicted of first degree premeditated murder under the natural and probable consequences doctrine. An aider and abettor's liability for premeditated first degree murder must be based on direct aiding and abetting principles. (*Id.* at p. 159.) Punishment for second degree murder "is commensurate with a defendant's culpability for aiding and abetting a target crime that would naturally, probably, and foreseeably result in a murder under the natural and probable consequences doctrine." (*Id.* at p. 166.)

The *Chiu* opinion did not directly address whether a coconspirator may be convicted of first degree premeditated murder under the natural and probable consequences doctrine. In *People v. Rivera* (2015) 234 Cal.App.4th 1350, 1356, the Court of Appeal addressed that issue and concluded the reasoning of *Chiu* applied equally to uncharged conspiracy liability because "the operation of the natural and

6

probable consequences doctrines is analogous" for aiding and abetting and uncharged conspiracy liability.  The Court of Appeal explained:  "This analogy appeared in *Chiu* itself, when the court was cataloguing examples of the natural and probable consequences doctrine as follows:  'The natural and probable consequences doctrine was recognized at common law and is firmly entrenched in California law as a theory of criminal liability. ([*People v.*] *Prettyman* [(1996)] 14 Cal.4th [248,] at pp. 260-261 . . . ; *People v. Durham* (1969) 70 Cal.2d 171, 181-185 & fn. 11 . . . ; cf. *People v. Kauffman* (1907) 152 Cal. 331, 334 . . . [conspiracy liability]; [citation].)'  (*Chiu*, *supra*, 59 Cal.4th at p. 163.)  Thus, when the California Supreme Court in *Chiu* was explaining the natural and probable consequences doctrine, it understood its applicability to both aiding and abetting and conspiracy theories."  (*People v. Rivera*, *supra*, at p. 1356.)  The *People v. Rivera* court held that the trial court erred by instructing the jury it could reach a verdict of first degree murder if it found the defendant conspired to commit the target crime and first degree murder was a natural and probable consequence of the target crime.  (*Id.* at p. 1357.)  We agree with the holding and analysis of *People v. Rivera*.

The *Chiu* opinion does not state whether it applies retroactively to convictions, such as Petitioner's, that were final on appeal when *Chiu* was decided. There are two potential tests for determining whether a new rule of law applies retroactively to state court convictions on collateral review.  The first test, which might be called the federal test, was set forth in *Schriro v. Summerlin* (2004) 542 U.S. 348 (*Schriro*).  The issue in *Schriro* was whether a new federal constitutional rule was substantive or procedural.  The United States Supreme Court clarified that the key issue in retroactivity analysis on collateral review is whether the new rule is substantive or procedural.  "New *substantive* rules generally apply retroactively" (*id.* at p. 351) while "[n]ew rules of procedure . . . do not apply retroactively" (*id.* at p. 352).  "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes" (*id.* at p. 353) or "modifies the elements of an offense" (*id.* at

7

p. 354). "In contrast, rules that regulate only the *manner of determining* the defendant's culpability are procedural." (*Id.* at p. 353.) The Supreme Court held the new rule was procedural and therefore did not apply retroactively on collateral review of a state court conviction. (*Id.* at p. 358.)

The *Chiu* decision set forth a new rule of substantive law by altering the range of conduct for which a defendant may be tried and convicted of first degree murder. Under *Chiu*, a defendant cannot be punished for first degree murder as an aider and abettor (or by analogy as a coconspirator) under the natural and probable consequences doctrine; that is to say, the range of conduct the law punishes for first degree murder has been altered to eliminate mere aiding and abetting or conspiring in the commission of an uncharged target crime, the natural and probable consequence of which is the commission of first degree murder by someone other than the aider and abettor or coconspirator. *Chiu* thus created a new substantive rule that applies retroactively pursuant to the federal test set forth in *Schriro*.

*Schriro* concerned the retroactivity of a new rule of federal constitutional law. In *Montgomery v. Louisiana*, *supra*, 577 U.S. at page __ [136 S.Ct. at page 729], the court held that "when a new substantive rule of constitutional law controls the outcome of a case, the Constitution requires state collateral review courts to give retroactive effect to that rule." Respondent argues *Montgomery v. Louisiana* has no effect on the retroactivity of *Chiu* because *Chiu* did not concern a substantive rule of federal constitutional law but an interpretation of California statute. Petitioner argues *Chiu* does concern a substantive rule of federal constitutional law because the due process clause of the Fourteenth Amendment prohibits a state from convicting a defendant of a crime without proving all of the elements beyond a reasonable doubt. We do not decide the issue because, we conclude, *Chiu* also is retroactive under the test set forth by the California Supreme Court in *People v. Mutch* (1971) 4 Cal.3d 389, 392 (*Mutch*).

8

In *Mutch*, *supra*, 4 Cal.3d at page 392, the California Supreme Court considered the retroactive effect of its decision overruling established precedent regarding the scope of the offense of aggravated kidnapping. The court determined that its decision should be given full retroactive effect to convictions that were final on appeal. (*Id.* at p. 396.) The court reasoned that because all crimes in California are statutory, the new interpretation of the aggravated kidnapping statute was not a change in the law but was a declaration of "what the intent of the Legislature ha[d] been" since enacting the amendment to the aggravated kidnapping statute. (*Id.* at p. 394.) "[W]e did not overturn a judge-made rule of common law; rather, we recognized a statutory rule which the Legislature adopted in 1951 but to which courts had not previously given appropriate effect." (*Ibid.*) Given this interpretation, the Supreme Court explained that it need not "undertake the often perilous task of applying to the facts of this case the test of 'retroactivity' developed in a well-known series of decisions of the United States Supreme Court." (*Ibid.*)[2]

Twenty years later, in *Woosley v. State of California* (1992) 3 Cal.4th 758, 794, the California Supreme Court offered this guidance in determining retroactivity under *Mutch*: "'To determine whether a decision should be given retroactive effect, the California courts first undertake a threshold inquiry: does the decision establish a new rule of law? If it does, the new rule may or may not be retroactive . . . ; but if it does not, "no question of retroactivity arises," because there is no material change in the law. [Citations.]' [Citation.] An example of a decision which does not establish a new rule of

---

[2] The California Supreme Court has articulated a different, three-part test for determining retroactivity of judicial opinions involving questions of procedure. Under the three-part test, a court considers "'(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.'" (*In re Dabney* (1969) 71 Cal.2d 1, 9; see *In re Johnson* (1970) 3 Cal.3d 404, 410 [retroactivity of opinion holding invocation of privilege against self-incrimination constitutes complete defense].)

law is one in which we give effect 'to a statutory rule that the courts had theretofore misconstrued [citation] . . . .' [Citations.] 'Whenever a decision undertakes to vindicate the original meaning of an enactment, putting into effect the policy intended from its inception, retroactive application is essential to accomplish that aim. [Citation.]' [Citation.]"

Murder, as all crimes in California, is statutory, as are the degrees of murder and the punishment. (Pen. Code, §§ 6, 187, 189, 190; see *In re Brown* (1973) 9 Cal.3d 612, 624 ["In California all crimes are statutory and there are no common law crimes."].) Aider and abettor liability likewise is statutory (Pen. Code, § 31; see *Chiu*, *supra*, 59 Cal.4th at p. 161) as is coconspirator liability (Pen. Code, §§ 182, 183; see *People v. Zacarias* (2007) 157 Cal.App.4th 652, 660). By limiting the scope of aider and abettor liability in the commission of murder, the court in *Chiu* was, in effect, engaging in statutory interpretation and declaring the Legislature's intent just as the court in *Mutch* did for the aggravated kidnapping statute. (*Chiu*, *supra*, at p. 164 ["We may, as a court, determine the extent of aiding and abetting liability for a particular offense."].)

Because, as we conclude, *Chiu* must be applied retroactively, it was error for the jury in this case to be presented with and instructed on a theory of first degree murder based on the natural and probable consequences doctrine.

## II.

### Petitioner Satisfies the Standard for Habeas Corpus Relief.

Habeas corpus relief is available when the court has acted in excess of jurisdiction. (Pen. Code, § 1487; *In re Zerbe* (1964) 60 Cal.2d 666, 667 (*Zerbe*).) The concept of jurisdiction for purposes of habeas corpus is not limited to its fundamental meaning, that is, jurisdiction over the person or the subject matter, but includes acts that exceed the court's powers as determined by constitutional provision, statute, or

court-developed rules. (*In re Harris* (1993) 5 Cal.4th 813, 838-839; *Zerbe*, *supra*, 60 Cal.2d at pp. 667-668.)

To determine whether Petitioner's conviction for first degree murder was in excess of the trial court's jurisdiction, we consider the record on appeal in case No. G040350. We previously granted Petitioner's unopposed request to take judicial notice of that appellate record.

That record demonstrates the jury convicted Petitioner under the theory of aiding and abetting, or conspiring to commit, the target offense of disturbing the peace, with murder as a natural and probable consequence (impermissible under *Chiu*), not under the alternate theory of direct aiding and abetting the murder (permissible under *Chiu*). In closing argument, the prosecutor described aiding and abetting a murder as "the least likely of the alternative theories of liability" in "a fact-driven analysis" and spent little time on it. In contrast, the prosecutor told the jury the natural and probable consequences doctrine based on disturbing the peace was "a more likely scenario, either as an aider and abettor or a coconspirator" and argued that theory of liability at greater length. The prosecutor urged the jury to convict based on the natural and probable consequences doctrine because it had "[n]o intent to kill requirement."

The jury was instructed it could convict Petitioner of second degree murder; however, the prosecutor's argument led the jury to convict him of first degree murder based on Francisco Lopez's mental state. The prosecutor told the jury it first had to determine if Francisco Lopez was the shooter, and, if he was, "he's guilty of first or second degree murder." The prosecutor argued that, as to the "nonshooters," the jury could choose among the three theories of liability presented, the least likely of which, the prosecutor had argued, was aiding and abetting a murder. Next, the prosecutor argued, "[i]f you find any of these to be your theory of murder, then the nonshooter stands in the shoes of the shooter. The law treats them equally." Because the jury found Francisco Lopez guilty of first degree murder, it is reasonably certain the jury also found Petitioner

11

guilty of first, rather than second, degree murder, based on the natural and probable consequences doctrine.

In considering whether Petitioner has satisfied the standard for habeas corpus relief, we cannot ignore the prosecutor's comments urging the jury to convict based on the natural and probable consequences doctrine and all but conceding the direct aider and abettor theory. Although respondent argues the evidence was sufficient to convict Petitioner as a direct aider and abettor, thereby arguably foreclosing habeas corpus relief under California Supreme Court authority, it appears the jury did not convict him on direct aiding and abetting. Whatever the basis for the jury's verdict might have been in theory, in reality the jury almost certainly convicted Petitioner of first degree murder as an aider and abettor under the natural and probable consequences doctrine, an interpretation of Penal Code section 31 rejected in *Chiu*.

"[A] defendant is entitled to habeas corpus if there is no material dispute as to the facts relating to his conviction and if it appears that the statute under which he was convicted did not prohibit his conduct. [Citations.]" (*Zerbe*, *supra*, 60 Cal.2d at p. 668; see *In re Earley* (1975) 14 Cal.3d 122, 125; *Mutch*, *supra*, 4 Cal.3d at p. 396.) Under the undisputed facts, Penal Code section 31 did not make Petitioner's conduct first degree murder under a natural and probable consequences doctrine: "'[T]here is no material dispute as to the facts relating to [Petitioner's] conviction and . . . it appears that the statute under which he was convicted did not prohibit his conduct [as first degree murder under a natural and probable consequences doctrine].'" (*Mutch*, *supra*, p. 396.) Petitioner's conviction was, therefore, in excess of the trial court's jurisdiction, and Petitioner is entitled to habeas corpus relief. Because we conclude Petitioner is entitled to habeas corpus relief under the standard set forth in *Zerbe*, *Mutch*, and *In re Earley*, we do not address his argument that he is entitled to relief under the standard used by the majority opinion in *In re Hansen* (2014) 227 Cal.App.4th 906.

12

## DISPOSITION

The petition for a writ of habeas corpus is granted insofar as it seeks relief from the conviction for first degree murder. The conviction on count 1 for first degree murder is vacated. In accordance with *Chiu*, *supra*, 59 Cal.4th 155, this matter is remanded to the trial court with directions to allow the People to accept a reduction of the conviction on count 1 to second degree murder, or to elect to retry Petitioner for first degree murder under a theory or theories other than natural and probable consequences. If the People accept the reduction of the conviction on count 1, then the true findings on the enhancements are affirmed, and Petitioner shall be resentenced.


FYBEL, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.

13