Filed 6/7/23  P. v. Trujillo CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                        v.<br><br>JOSE ANDRES PINEDA TRUJILLO,<br><br>        Defendant and Appellant. | F081571<br><br>(Super. Ct. No. BF120858B)<br><br>**OPINION** |
| In re<br><br>        JOSE ANDRES PINEDA TRUJILLO<br><br>                On Habeas Corpus. | F083774 |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Michael G. Bush, Judge.  ORIGINAL PROCEEDINGS; petition for writ of habeas corpus.  Gary T. Friedman, Judge.

Mary K. McComb, State Public Defender, Samuel Weiscovitz, Deputy State Public Defender, under appointment by the Court of Appeal, for Defendant and Appellant and for Petitioner.

---

[*]        Before Hill, P. J., Franson, J. and Peña, J.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri, Eric L. Christoffersen and Barton Bowers, Deputy Attorneys General, for Plaintiff and Respondent and for Respondent.

-ooOoo-

Petitioner Jose Andres Pineda Trujillo seeks a writ of habeas corpus. Also pending before this court is an appeal following the denial of his petition for resentencing on charges affected by the writ. The People agree that the writ is proper, but the parties disagree on two issues. First, they disagree on the effect the writ will have on the ability to retry petitioner upon remand. Second, they disagree on whether issuing the writ moots petitioner's appeal. In the writ proceedings, this court previously issued an order to show cause, the People filed a return, and petitioner filed a traverse. Upon review of the record[1] and arguments, we agree that the writ is warranted and determine that the verdict in petitioner's original trial precludes the People from convicting petitioner of an offense that requires proof petitioner acted with specific intent to kill. Although recent changes in the law likely affect the People's options with respect to retrying petitioner, we do not agree that ordering the People be precluded from retrying petitioner on any theory is proper at this time. We therefore issue the writ of habeas corpus, vacate petitioner's convictions for first degree murder and attempted murder, and remand with instructions that, should the People elect not to proceed with a retrial in light of the preclusive effect of the prior verdict, the trial court enter a conviction of second degree murder.

We further take this opportunity to dismiss the appeal as moot. This court recognizes the merit of the appeal in light of the current case law and the fact that the People concede both the error alleged and that petitioner may file a new petition for

---

[1]     Both parties request this court take judicial notice of this court's records in petitioner's direct appeal from the conviction (*People v. Trujillo* (Sept. 30, 2011, F060330) [nonpub. opn.]). With no objection and finding judicial notice proper, this court agrees.

2.

resentencing upon any future conviction. The court concludes, however, that in light of the potential future proceedings and the legal status of the case following the grant of petitioner's writ, there is no relief the court can provide in the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

As detailed in *People v. Trujillo*, *supra*, F060330, on February 22, 2010, an amended information was filed against petitioner and Pedro Trujillo,[2] charging them with premeditated murder (Pen. Code, § 187, subd. (a);[3] count 1), premeditated attempted murder (§§ 187, subd. (a), 189, 664; counts 2 & 3), shooting at an inhabited dwelling (§ 246; counts 4, 5, & 6), and discharging a firearm from a motor vehicle (§ 12034, subd. (c); counts 7, 8, & 9). The special circumstance of drive-by murder (§ 190.2, subd. (a)(21)), and special allegations that petitioner and Pedro personally used a firearm (§ 12022.5, subd. (a)) and personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)) were attached to count 1. Special allegations that petitioner and Pedro personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)) and personally inflicted great bodily injury (§ 12022.7) were attached to counts 2 and 3. Special allegations that petitioner and Pedro inflicted great bodily injury as a result of discharging a firearm (§ 12022.55) and causing the offenses to become serious (§ 1192.7, subd. (c)(8)) and violent (§ 667.5, subd. (c)(8)) felonies were attached to counts 4 through 9.

Petitioner and Pedro were jointly tried and convicted. Pedro was found guilty of all substantive charges. Further, the special circumstance allegations and all of the enhancement allegations were found to be true, except for the great bodily injury enhancement allegations attached to counts 6 and 9, which were found to be not true. Petitioner also was found guilty of all substantive charges, but the special circumstance

---

[2] We refer to Pedro Trujillo as Pedro only to differentiate him from petitioner.

[3] Undesignated statutory references are to the Penal Code.

3.

allegation of committing a drive-by murder and all of the enhancement allegations were found to be not true with the exception of the premeditation allegations attached to counts 2 and 3, which were found to be true.

As petitioner argues, and the People do not dispute, the result of the jury's findings was a verdict that Pedro, not petitioner, was the actual shooter in the crime. This is consistent with the manner in which the case was tried. One theory presented by the People at trial was that the events were part of an uncharged conspiracy. In the jury instructions for this theory, the jury was instructed that to prove petitioner was part of a conspiracy, and thus to potentially hold him liable for all of the offenses charged that were a natural and probable consequence of the conspiracy, they must find true one of six alleged overt acts. These overt acts alleged that petitioner was in a car with Pedro and leaned back so that Pedro could fire a gun at a crowd of people. The theory only alleged that Pedro fired a gun.

Relevant to resolution of this case, the jury was also instructed on an aiding and abetting theory, a natural and probable consequences theory, and a "kill zone" theory for various aspects of the case. With respect to the aiding and abetting theory, the jury was instructed the people must prove: (1) the perpetrator committed the crime; (2) the defendant knew the perpetrator intended to commit the crime; (3) the defendant intended to aid and abet the perpetrator in committing the crime; and (4) the defendant did aid and abet the perpetrator's commission of the crime. The instruction explained that one "aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

Also relevant are the instructions for the special circumstance of murder by means of intentional discharge of a firearm from a motor vehicle attached to the first degree murder charge. The jury was specifically instructed that it "must consider the alleged special circumstances separately for each defendant." The instructions then provided that

4.

in order to prove this special circumstance "for a defendant who is not the actual killer but who is guilty of first degree murder as (an aider and abettor/ [or] a member of a conspiracy), the People must prove that the defendant acted with the intent to kill." The special circumstance further required proof that the "murder was perpetrated by means of discharging a firearm from a motor vehicle," the "perpetrator intentionally discharged the firearm at another person or persons outside the vehicle," and the "perpetrator, at the time [he] … discharged the firearm, specifically intended to inflict death."

Petitioner was eventually sentenced to an unstayed term of 25 years to life, plus two terms of life with the possibility of parole.

On January 28, 2019, petitioner requested resentencing under former section 1170.95. The People opposed petitioner's request. Reciting the facts of the case as detailed in *People v. Trujillo*, *supra*, F060330, the People argued petitioner was not charged or convicted under a felony murder or natural and probable consequences theory, but instead was accused as an aider and abettor to a drive-by shooting. Alternatively, the People argued the facts underlying petitioner's conviction demonstrated he was both a major participant in the offense and harbored an intent to kill, which could be inferred from his actions. On August 10, 2020, the trial court entered a minute order denying petitioner's petition with no explanation. The appeal was timely filed on August 20, 2020. The appeal has been fully briefed and the People concede the trial court erred in failing to order an evidentiary hearing.

On January 19, 2022, petitioner filed the writ petition. After informal briefing, this court issued an order to show cause and granted petitioner's motion to stay the proceedings in the appeal until resolution of the writ. The People then filed a return, and petitioner filed a traverse.

On April 17, 2023, the court issued an order lifting the stay in the appeal and consolidating the writ petition filed in case No. F083774 with the appeal in case No. F081571 for all purposes.

5.

## DISCUSSION

In this court's order to show cause, issued October 7, 2022, we permitted both parties to rely upon arguments contained within their informal responses, with the caveat that they "should separately address the timeliness of petitioner's claim relying on *People v. Chiu* (2014) 59 Cal.4th 155, whether a retrial is permitted if the *Chiu* claim is timely, and any effect granting writ relief will have on petitioner's appeal in case No. F081571." The parties have properly complied with the court's order.

### *The Merits Are Conceded*

In their informal briefing, the People conceded that petitioner had demonstrated a prima facie case for relief under both *People v. Canizales* (2019) 7 Cal.5th 591 (*Canizales*) and *People v. Chiu*, *supra*, 59 Cal.4th 155 (*Chiu*). The People argued, however, that petitioner's *Chiu* claim appeared untimely. In their return, however, the People now concede the *Chiu* claim is timely and warrants writ relief. The People further affirm petitioner's *Canizales* claim warrants writ relief.

*Chiu* held that one cannot be convicted of first degree premeditated murder under the natural and probable consequences doctrine, but rather must satisfy the requirements for direct aiding and abetting as the law then defined that crime. (*Chiu*, *supra*, 59 Cal.4th at pp. 166–167.)[4] The People concede that the holding in *Chiu* is now equally applicable to attempted murder charges against one who was not the actual killer. (See § 189, subd. (e) [applying to participants in the perpetration or attempted perpetration of listed offenses].)

---

[4] At the time, and as petitioner's jury was instructed, aiding and abetting a first degree murder could occur when one "aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission." (*Chiu*, *supra*, 59 Cal.4th at p. 167.) Subject to exceptions not relevant here, the law now applies first degree murder to one who "was not the actual killer, but, with intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." (§ 189, subd. (e)(2).)

*Canizales* held that the standard instructions used to inform the jury of the "kill zone theory" of liability were inadequate and should be revised to ensure one is not convicted when they act with only a conscious disregard of the risk of serious injury or death for those around the primary target. (*Canizales*, *supra*, 7 Cal.5th at pp. 607–609.) The People concede the instruction used with respect to petitioner's attempted murder charges was immaterially different from that rejected in *Canizales* and contend that the circumstances of the trial do not indicate whether the jury relied on an uncharged conspiracy, aiding and abetting theory, or kill zone theory to convict.

Finally, the People concede that both *Chiu* and *Canizales* are to be given retroactive effect and that petitioner has properly demonstrated prejudice. (See *In re Lopez* (2016) 246 Cal.App.4th 350, 359–360 [*Chiu* applies retroactively to final cases]; *In re Rayford* (2020) 50 Cal.App.5th 754, 770, 776–777 [*Canizales* applies retroactively to final cases].) For *Chiu* error, reversal is required "unless the reviewing court concludes beyond a reasonable doubt that the jury actually relied on a legally valid theory in convicting the defendant of first degree murder." (*In re Martinez* (2017) 3 Cal.5th 1216, 1218.) For *Canizales* error, a "reviewing court must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a reasonable doubt." (*People v. Aledamat* (2019) 8 Cal.5th 1, 13.)

Upon review of the record, case law, arguments, and concessions, this court agrees that petitioner has demonstrated he is entitled to a writ of habeas corpus with respect to his first degree murder and attempted murder convictions. The jury was presented with theories for liability subsequently invalidated by *Chiu*, and the record does not clearly indicate the jury did not rely upon those theories when convicting petitioner of first degree murder. Likewise, the jury was presented with similar theories for finding petitioner guilty of attempted murder, but also including the "kill zone" instructions since

7.

found improper under *Canizales*, and the record does not demonstrate the error was harmless beyond a reasonable doubt.

*Application of Collateral Estoppel*

Although both sides agree a writ should issue, they disagree on the implications of issuing the writ and thus on whether this court should prevent the People from retrying petitioner on the vacated convictions. Petitioner contends that he is entitled to collateral estoppel on the factual claim that he possessed an intent to kill in his role in the shooting and therefore his relief should include an order that he not be retried on any of the vacated convictions. The People do not agree petitioner has demonstrated that collateral estoppel applies and argue the case should be remanded so that the district attorney may make the decision whether a retrial is appropriate.

Although retrial after acquittal is generally controlled by the double jeopardy clause of the Fifth Amendment to the United States Constitution and article I, section 15, of the California Constitution, in narrow circumstances where two offenses involve a common issue of ultimate fact the doctrine of collateral estoppel may also apply such that " 'the retrial of an issue can be considered tantamount to the retrial of an offense,' even if the elements of the two offenses differ." (*People v. Sanchez* (2020) 49 Cal.App.5th 961, 974.) The analysis for obtaining such a result is a demanding one that requires us " 'to say that "it would have been *irrational* for the jury" in the first trial to acquit without finding in the defendant's favor on a fact essential to a conviction in the second.' " (*Id.* at p. 975.) "In other words, a second trial is prohibited only if conviction would require the prosecutor to prevail on a factual issue the jury *necessarily* resolved in the defendant's favor in the first trial. [Citations.] It is not sufficient that the jury *likely* acquitted based on the factual issue in question." (*Ibid.*)

To consider applying this doctrine, we examine the record of the prior proceedings to determine whether a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration. (*Sanchez*, *supra*,

49 Cal.App.5th at p. 975.) The defendant bears the burden of establishing the facts necessary to prove the ultimate issue has been determined by a valid and final judgment of acquittal. (*Id.* at pp. 975–976.)

The applicability of this doctrine to cases such as this, where the second proceedings are technically a continuation of the initial proceedings,[5] is not well settled. Indeed, in at least three instances our Supreme Court has acknowledged this as an open issue, indicated a belief the doctrine should not apply to continued prosecutions, but specifically failed to resolve the issue because other facts indicated to the court that the preclusion did not apply. (See *People v. Barragan* (2004) 32 Cal.4th 236, 253–254 [noting applicability of the doctrine was "a threshold issue that we have not yet decided" before noting past analysis showing it likely inapplicable but determining "we need not resolve this threshold question because defendant's res judicata claim fails for other reasons"]; *People v. Memro* (1995) 11 Cal.4th 786, 881–882 [noting it was "questionable whether the doctrine of collateral estoppel even applies to further proceedings in the same litigation" but stating that "at most it would bar retrial" of only an enhancement that had not been recharged]; *People v. Santamaria* (1994) 8 Cal.4th 903, 913–916 (*Santamaria*) [refusing to resolve dispute after noting the historical need for a subsequent prosecution, that the United States Supreme Court might well not apply collateral estoppel to a retrial of a count the jury had previously convicted on, and that at least two potentially distinguishable federal cases had found the doctrine applicable to certain issues on retrial].)

In this case, petitioner has made a compelling showing that the jury specifically found he did not harbor an intent to kill when it convicted him. As noted, the jury found the drive-by murder special circumstance to be true for Pedro and not true for petitioner.

---

[5]    As noted in *In re Cruz* (2003) 104 Cal.App.4th 1339, 1346, habeas corpus proceedings correct erroneous convictions by invalidating the conviction and restoring the defendant to the position she or he would be in if there had been no trial and conviction.

Thus, as to Pedro, the jury necessarily found the "murder was perpetrated by means of discharging a firearm from a motor vehicle," the "perpetrator intentionally discharged the firearm at another person or persons outside the vehicle," and the "perpetrator, at the time [he] … discharged the firearm, specifically intended to inflict death." Also, as the People concede, "the jury found that Pedro … was the actual killer." Thus, under the relevant instructions, to convict petitioner of the same special circumstance after finding him guilty of first degree murder as an aider and abettor or member of a conspiracy, the jury was instructed the prosecutor "must prove that [petitioner] acted with the intent to kill." This was the only difference between the required proof between petitioner and Pedro, and the jury's not true finding shows they harbored a reasonable doubt as to petitioner's intent.[6]

Historically, this finding would not preclude retrial because petitioner could still be convicted under an aiding and abetting theory or under an uncharged conspiracy theory under a lower mental state than actual intent to kill. (*In re Martin* (1987) 44 Cal.3d 1, 53 ["It is the general rule that even when on habeas corpus it is determined that the judgment is void, the petitioner is nevertheless subject to retrial unless he has

---

[6]     The People do not discuss the implications of the jury's findings on this point when contesting petitioner's argument for application of collateral estoppel principles. Rather the People focus on the concededly flawed kill zone theory instructions associated with the attempted murder charges. These instructed, "If you have a reasonable doubt whether [petitioner] intended to kill Valerie Leyva and/or Josefa Villarreal or intended to kill Rene Puga and/or Eric Rodriguez by harming everyone in the kill zone, then you must find [petitioner] not guilty of the attempted murder of Valerie Leyva and/or Josefa Villarreal." The People argue the instructions prove the jury determined petitioner had an intent to kill. We do not agree. The kill zone instruction standing alone required consideration of petitioner's intent to kill, but the overall instructions as a whole did not. Rather, as petitioner points out, the uncharged conspiracy instructions permitted petitioner's conviction on all substantive charges, but not of the special circumstances attached to the murder charge, if the jury found Pedro guilty of any one charge and the remaining counts were the natural and probable consequences of the conspiracy. There was no intent to kill mental state required to enter into the conspiracy. As such, there was nothing irrational or irreconcilable about the jury finding no intent to kill while convicting petitioner of attempted murder.

10.

effectively been acquitted of the offense in question."].)  In such a circumstance, the case would fall in line with those like *Santamaria*, where the fact the jury harbored a reasonable doubt whether the defendant used a knife did not preclude them from convicting of murder under an aider and abettor theory.  (*Santamaria*, *supra*, 8 Cal.4th at p. 922.)

However, in this instance the law has changed dramatically since petitioner's conviction.  While intent to kill was not required to convict under an aiding and abetting or an uncharged conspiracy theory in the past, amendments to the Penal Code now specifically require that intent.  (See *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 [noting amendment to § 188, subd. (a)(3) requires that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime"]; *People v. Rivera* (2015) 234 Cal.App.4th 1350, 1357 [finding instructional error where jury could find the defendant guilty of first degree murder if it found the target crime of the uncharged conspiracy was discharging a firearm at an occupied vehicle and that first degree murder was a natural and probable consequence of that target crime]; *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 [explaining that "when the charged offense and the intended offense—murder or attempted murder—are the same, i.e., when guilt does not depend on the natural and probable consequences doctrine, is that the aider and abettor must know and share the murderous intent of the actual perpetrator"].)[7]

---

[7]  While these changes also now apply to second degree murder, our Supreme Court has explained that "the Legislature intended [former] section 1170.95 to be the exclusive avenue for retroactive relief under Senate Bill [No. ]1437[ (2017-2018 Reg. Sess.)]."  (*People v. Gentile*, *supra*, 10 Cal.5th at p. 853.)  We thus find *Chiu*'s statement "that punishment for second degree murder is commensurate with a defendant's culpability for aiding and abetting a target crime that would naturally, probably, and foreseeably result in a murder under the natural and probable consequences doctrine" (*Chiu*, *supra*, 59 Cal.4th at p. 166) remains true for those convicted of first degree murder under the natural and probable consequences doctrine prior to *Chiu* and, therefore, that *Chiu*'s relief in the form of forcing the People to either retry the defendant or accept a reduction to second degree murder remains proper (see *id*. at p. 168).  While later

11.

We must therefore determine whether collateral estoppel principles should apply to a potential retrial where petitioner was originally convicted but the jury made a necessary factual finding when acquitting petitioner of a different offense that would now preclude conviction under the law as it has changed in the interim. We conclude that under the unique facts of this case, collateral estoppel principles can and do apply.

As noted previously, in the times our Supreme Court has considered similar questions, it has been skeptical that the United States Supreme Court would extend collateral estoppel principles to continued prosecutions, as opposed to subsequent prosecutions. Since those rulings, the United States Supreme Court has provided additional guidance in this area.

In *Yeager v. United States* (2009) 557 U.S. 110 (*Yeager*), the court discussed what it considered "the second interest at the core" of the double jeopardy clause, an "interest in preserving the finality" of an acquittal. (*Yeager*, at pp. 118–119.) In that case, the jury had acquitted the defendant on certain fraud charges but failed to reach a verdict in others related to insider trading, all of which required a factual finding that the defendant possessed insider information. (*Id*. at pp. 115–116.) In barring a retrial on the charges where the jury hung, the court explained that the "reasoning in *Ashe* [*v. Swenson* (1970) 397 U.S. 436] is … controlling because, for double jeopardy purposes, the jury's inability to reach a verdict on the insider trading counts was a nonevent and the acquittals on the fraud counts are entitled to the same effect as Ashe's acquittal." (*Id*. at p. 120.) While the court spent considerable time explaining why a count upon which the jury hung should not be considered in the preclusion analysis, it made clear that the principles set forth in *Ashe* applied to the attempt to continue the current prosecution and that the final analysis requires the court "identify what a jury necessarily determined at trial." (*Id.* at

changes to the law have modified this logic, section 1172.6 remains a viable avenue for retroactive application of these changes.

12.

p. 122.) In doing so, "courts should scrutinize a jury's decisions" while recognizing that a "verdict of acquittal represents the community's collective judgment regarding all the evidence and arguments presented to it." (*Ibid.*) Turning to the facts before it, the high court reasoned that "if the possession of insider information was a critical issue of ultimate fact in all of the charges against petitioner, a jury verdict that necessarily decided that issue in his favor protects him from prosecution for any charge for which that is an essential element" under the principles set forth in *Ashe*. (*Id.* at p. 123.)

The high court's analysis in *Yeager* puts to rest our Supreme Court's concerns regarding the application of certain double jeopardy principles to continuing prosecutions, making clear that at least in the context of an acquittal that necessarily forecloses conviction of a charge that shares an essential factual element, the doctrine may apply if the jury's intent is discernable. The high court's analysis does not, however, specifically deal with the potential incongruency highlighted in *Santamaria* that arises in situations where the jury previously convicted on one charge but acquitted on another. As our Supreme Court wrote, "it would be odd if a conviction that is clearly inconsistent with an acquittal or not true finding may be retried without constraint after an appellate reversal, but a conviction that may, in theory at least, be reconciled with another verdict would, as here, be significantly affected by that verdict following a similar reversal." (*Santamaria*, *supra*, 8 Cal.4th at p. 915.)

Although not directly resolved, the United States Supreme Court's focus on the importance of the jury's acquittal in the overall context of the case leads us to conclude that preclusion principles can apply in such circumstances and do apply in this case. As detailed above, the record in this case does not support a conclusion that the jury acted in an inconsistent manner in convicting petitioner of all substantive charges despite finding not true a special allegation that he had the specific intent to kill. Rather, in light of the theories presented, the instructions given, and the verdict rendered, it requires no great feat of deduction to conclude the jury convicted petitioner based on an indirect role in the

13.

drive-by shooting through either a conspiracy or aiding and abetting theory that relied on the natural and probable consequences doctrine.  There is no evidence in the record that would justify a contention the jury's verdict should be "explained by 'mistake, compromise, or lenity' [citation] or 'confusion or ennui' " or any of the other grounds that raised concerns for our Supreme Court in *Santamaria*.  (*Santamaria*, *supra*, 8 Cal.4th at p. 915.)

While the jury's guilty verdict on the substantive charges is an important difference from the nonevent of the hung jury in *Yeager*, the overall record shows that any suggestion of inconsistency between the conviction of either the first degree murder or the attempted murder charge and the not true finding on the drive-by shooting special circumstance rests on a truly thin reed.  (*Yeager*, *supra*, 557 U.S. at p. 125 ["In this case, there is merely a *suggestion* that the jury may have acted irrationally.  And instead of resting that suggestion on a verdict, the Government relies on a hung count, the thinnest reed of all."].)  While a prior guilty verdict may create an irreconcilable inconsistency with an acquittal and thus permit retrial, the ultimate analysis is not whether a guilty verdict was reached but whether the jury actually acquitted on the critical issue.  (See *Bravo-Fernandez v. United States* (2016) 580 U.S. 5, 21 [noting when rejecting a bar to retrial after inconsistent verdicts that retrial would not "be tolerable if the trial error could resolve the apparent inconsistency in the jury's verdicts," as in a situation where review of the instructions could reconcile the verdicts].)  In this case, the proper analysis clearly shows an acquittal by the jury on the contested issue of intent to kill.

For these reasons, collateral estoppel issues can and do bar retrial in this case of any offense that requires the jury to determine petitioner had an intent to kill.  Petitioner contends that our conclusion on this issue requires us to remand with instructions he be resentenced to second degree murder and not retried.  However, in light of the substantial changes to the law in this area and the lack of focused argument on whether any theory remains under which petitioner may be retried, we do not agree with this result.  "It is the

14.

general rule that even when on habeas corpus it is determined that the judgment is void, the petitioner is nevertheless subject to retrial unless he has effectively been acquitted of the offense in question." (*In re Martin*, *supra*, 44 Cal.3d at p. 53.)

In this case, petitioner has shown that he has been acquitted of harboring an intent to kill at the time of the shooting. This acquittal is binding upon any retrial dependent upon such a factual finding. However, petitioner has not conclusively demonstrated that there remains no theory upon which a conviction could be had. While this court sees no obvious option, the substantial recent changes in the law leave this court convinced that such an analysis regarding the ability and efficacy of retrying petitioner should be made by the district attorney in the first instance. Should the district attorney be unable to or elect not to retry petitioner under a viable theory of guilt, the court shall enter a judgment of conviction for second degree murder and sentence petitioner accordingly. (See *Chiu*, *supra*, 59 Cal.4th at p. 168.)

*Dismissal of the Appeal*

In the order to show cause issued in the writ proceedings, we requested the parties brief how the relief contemplated in the writ proceedings would affect petitioner's pending appeal. The People argue, and we agree, that relief on the writ moots the appeal.

As petitioner acknowledges, "[a]n appeal becomes moot when ' " ' "the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief." ' " ' " (*Becerra v. McClatchy Co.* (2021) 69 Cal.App.5th 913, 927, fn. 4; but see *People v. Delong* (2002) 101 Cal.App.4th 482, 486–489 [discussing the unsettled nature in which criminal appeals are reviewed for mootness].) In this case, we have vacated petitioner's convictions for first degree murder and premeditated attempted murder. Petitioner contends that he remains convicted of second degree murder and, therefore, relief on his appeal from denial of resentencing could be granted. But this is not technically correct.

As it stands, petitioner has been returned to his status pretrial, with his prior relevant convictions vacated. (See *In re Cruz*, *supra*, 104 Cal.App.4th at p. 1346 [explaining "the conviction is set aside but the prosecution is not ended"].) Further action is required by the trial court to enter a judgment of second degree murder, if one is to be entered, and petitioner remains to be sentenced on that count. Given that the resentencing statute only allows one "convicted of … murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" and attempted murder to "file a petition with the court that sentenced the petitioner" on those crimes, the lack of a current conviction or sentence means no relief can be provided on petitioner's appeal. (See § 1172.6, subd. (a).) Moreover, it is possible that petitioner could be retried, rendering any relief advisory at best.

We note, however, that the People concede error with respect to the court's entry of an order without an evidentiary hearing in this instance and concede petitioner may file a new request for resentencing at the conclusion of these proceedings. (See *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 ["However, this authority to make determinations without conducting an evidentiary hearing pursuant to [former] section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)."], abrogated on another ground in *People v. Lewis* (2021) 11 Cal.5th 952, 963.) The People's well-taken concessions should ensure a similar error does not arise again if petitioner eventually files a new resentencing request.

## DISPOSITION

The petition for writ of habeas corpus is granted. For the reasons set forth above, the superior court shall vacate petitioner's convictions on counts 1, 2, and 3. Petitioner's

convictions on the remaining counts shall not be affected. If the prosecution cannot or elects to not retry petitioner, the trial court shall enter judgment reflecting a conviction of second degree murder on count 1 and resentence petitioner on all remaining counts accordingly.

For the reasons set forth above, it is further ORDERED that petitioner's appeal is dismissed as moot.