Filed 6/11/25  P. v. Arriaga CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CORRIE DENISE ARRIAGA,<br><br>    Defendant and Appellant. | H051594<br>(Monterey County<br> Super. Ct. No. 18CR004863) |

In October 2019, defendant Corrie Denise Arriaga pleaded no contest to first degree "willful, deliberate and premeditated murder" (Pen. Code, §§ 187, subd. (a), 189),[1] admitting the special circumstance that the murder was intentional and involved the infliction of torture (§ 190.2, subd. (a)(18)).  By the time of Arriaga's plea, it was well established that a person could not be convicted of premeditated and deliberate murder without personally harboring malice.  (See, e.g., *People v. Chiu* (2014) 59 Cal.4th 155, 158–159 (*Chiu*); *People v. Rivera* (2015) 234 Cal.App.4th 1350, 1357 (*Rivera*).)  Her plea also followed the operative date of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which abrogated the natural and probable consequences doctrine of accomplice liability and expressly provided that "[m]alice shall not be imputed to a person based solely on . . . her participation in a crime."  (Stats. 2018, ch. 1015, § 2,

---

[1] Unspecified statutory references are to the Penal Code.

p. 6675 [amending §§ 188 and 189].) In 2023, however, Arriaga petitioned under section 1172.6 to have her murder conviction vacated and to be resentenced, asserting that the prosecution had proceeded on a theory of imputed malice. Because the trial court correctly determined that the record of conviction establishes that Arriaga is ineligible for relief, we affirm.

## I. BACKGROUND

### A. *Brief Summary of the Offenses[2]*

In August 2017, Courtney Ann Turney was found dead in an apartment shared by Arriaga and Manuel Jesus Lopez Jarquin. Before Turney's death, Arriaga had been restricting Turney's access to food and water, which resulted in Turney becoming malnourished and dehydrated to the point of sometimes consuming birdseed and nonfood items like cleaning products. Arriaga inflicted physical abuse on Turney and deposited checks made out to Turney. Only Arriaga and Lopez Jarquin had the key to unlock the front door of the apartment, and Turney had been unable to leave.

### B. *The Information and Arriaga's Plea*

In February 2019, Arriaga was charged by information with willful, deliberate, and premeditated murder (§ 187, subd. (a)) with a torture-murder special circumstance (§ 190.2, subd. (a)(18)), torture (§ 206), human trafficking (§ 236.1, subd. (a)) with an allegation of great bodily injury (§ 236.4, subd. (b)), false imprisonment (§ 368, subd. (f)) with an enhancement for great bodily injury (§ 12022.7, subd. (a)), and three counts of theft from an elder or dependent adult (§ 368, subd. (d)).

In August 2019, Arriaga pleaded no contest to the charge of willful, deliberate, and premeditated murder and admitted the torture-murder special circumstance with the understanding that she would be sentenced to life without the possibility of parole. In her

---

[2] In a waiver of rights and plea form, Arriaga stipulated to several facts as true. We derive our summary of the offense from these stipulated facts.

waiver of rights and plea form, Arriaga stipulated that the murder of Turney "was willful, deliberate and premeditated, within the meaning of Penal Code section 189," that it "was intentional and involved the infliction of torture, within the meaning of Penal Code section 190.2[, subdivision ](a)(18)," and that "[a]t the time of the offenses, [Arriaga] had the requisite intent and mental state for the crime to which [she was] pleading guilty and for the special circumstance [she was] admitting."

In December 2019, the trial court sentenced Arriaga to the agreed-upon term of life without the possibility of parole. The remaining counts were dismissed as part of the plea agreement.

## C.     *The Petition for Resentencing*

In June 2023, Arriaga filed a form petition for resentencing under section 1172.6 seeking vacatur of her murder conviction and for resentencing. The People opposed the petition, arguing that imputed malice theories had already been abrogated by the time Arriaga pleaded no contest to first degree murder and that the torture-murder special circumstance required a finding that Arriaga had the intent to kill Turney. The trial court denied the petition at the prima facie stage, concluding that Arriaga could not have been convicted under an invalid theory of murder and that the record of conviction conclusively refuted the allegations in her petition for relief.

## II.     DISCUSSION

## A.     *Section 1172.6 and Standard of Review*

Effective January 1, 2019, the Legislature enacted Senate Bill 1437, which amended the murder law under sections 188 and 189 " 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).) Former section 1170.95, now 1172.6, created a procedural mechanism for those convicted of

3

crimes under now-invalid theories of imputed malice to seek vacatur of their convictions and for resentencing. (*Curiel* at p. 449; § 1172.6, subd. (a).)

In order to qualify for resentencing, the following three conditions must apply: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

Once a petitioner has filed a facially sufficient petition alleging that he or she is eligible for relief based on all the requirements set forth under section 1172.6, subdivision (a), the trial court shall appoint counsel, and after the parties have had the opportunity to submit briefing on whether a prima facie case for relief exists, the trial court shall order a hearing to determine whether the defendant has stated a prima facie case for relief. (§ 1172.6, subds. (b)(3) & (c).) " '[I]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.' " (*Curiel*, *supra*, 15 Cal.5th at p. 460; see *People v. Lewis* (2021) 11 Cal.5th 952, 971 [at prima facie stage, the court takes petitioner's factual allegations as true].)

We review de novo the trial court's determination whether a defendant has made a prima facie case for relief. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

**B.**     *Analysis*

The trial court did not err by denying Arriaga relief at the prima facie stage because the record of conviction conclusively establishes her ineligibility for relief. By

4

her plea, Arriaga as a matter of law admitted a specific intent to kill and could not have been convicted under a theory of imputed malice. (See *People v. DeVaughn* (1977) 18 Cal.3d 889, 895 ["a plea of guilty admits all matters essential to the conviction"].)

In February 2019, Arriaga was charged with willful, deliberate, and premeditated murder with a torture-murder special circumstance under section 190.2, subdivision (a)(18). And in August 2019, Arriaga specifically pleaded no contest to the murder charge as alleged—she pleaded no contest to willful, deliberate, and premeditated murder, admitting the torture-murder special circumstance. The crime of murder was *not* generically charged and did not permit the prosecution to proceed under any theory—premeditation and deliberation were specifically alleged and admitted by Arriaga in her plea. (Cf. *People v. Romero* (2022) 80 Cal.App.5th 145, 153 ["generic charge of murder committed ' "willfully, unlawfully, and with malice aforethought" ' does not specify or exclude any particular theory of murder"]; *People v. Estrada* (2024) 101 Cal.App.5th 328, 337–338 [generic charge of attempted murder committed " 'unlawfully and with malice aforethought' " permitted prosecution to proceed under any theory].)

By the time Arriaga was charged and when she entered her plea to first degree premeditated murder in 2019, Senate Bill 1437 was already in effect and had already eliminated the natural and probable consequences doctrine for all types of murder. (*Curiel*, *supra*, 15 Cal.5th at p. 448.) And even earlier in 2014, the California Supreme Court had already held that the natural and probable consequences doctrine did not extend to aiding and abetting a first degree premeditated murder, and that an aider and abettor to first degree premeditated murder must be convicted based on direct aiding and abetting principles. (*Chiu*, *supra*, 59 Cal.4th at pp. 158–159.) Thus the *only* valid aiding and abetting theory both at the time Arriaga was charged and at the time she entered her plea was a theory of *direct* aiding and abetting, and "[a] theory of direct aiding and abetting remains a valid theory after Senate Bill No. 1437." (*People v. Coley* (2022) 77 Cal.App.5th 539, 546.)

Furthermore, under *Chiu*, a defendant cannot be convicted of first degree premeditated murder under an uncharged conspiracy theory if the target crime of the uncharged conspiracy is *not* murder. (See *Rivera*, *supra*, 234 Cal.App.4th at p. 1357; *In re Lopez* (2016) 246 Cal.App.4th 350, 357 [accord].)[3] *Rivera*, for example, held that it would be error for the jury to reach a verdict of first degree murder if the target crime of the uncharged conspiracy was discharging a firearm at an occupied vehicle, even if the natural and probable consequences of the target crime was first degree murder. (*Rivera*, at p. 1357.) And if Arriaga had been convicted under an uncharged conspiracy theory and the conspiracy was to commit murder, "a conviction of conspiracy to commit murder requires a finding of intent to kill, and cannot be based on a theory of implied malice." (*People v. Swain* (1996) 12 Cal.4th 593, 607.)[4]

Arriaga's admission of the torture-murder special circumstance is also proof that she had the intent to kill and was therefore not convicted under an imputed malice theory. Section 190.2, subdivision (a)(18) establishes that a first degree murder is punishable by life without possibility of parole or death if the murder "was intentional and involved the infliction of torture." "Proof of a murder committed under the torture-murder special circumstance requires (1) proof of first degree murder, (2) proof that the defendant

---

[3] Thus, Arriaga's reliance on authorities involving pre-*Chiu* and pre-Senate Bill 1437 convictions is unavailing. (See, e.g., *People v. Eynon* (2021) 68 Cal.App.5th 967 [finding prima facie case for relief had been made when defendant entered plea in 2013 before the *Chiu* decision]; *Curiel*, *supra*, 15 Cal.5th 433, 468 [pre-Senate Bill 1437 jury finding of intent to kill did not conclusively negate defendant's petition for relief because jury had been instructed with natural and probable consequences doctrine].)

[4] In her opening brief, Arriaga argues that she admitted only that the murder "*was committed* willfully, deliberately, and with premeditation," distinguishing this from an admission that *she* "committed willful, deliberate, and premeditated murder." To the extent Arriaga argues that her admission is that *someone* (not herself) committed premeditated murder, her plea of no contest to premeditated murder and admission of the torture-murder special circumstance already admitted the essential element that *she* intended to kill.

intended to kill and torture the victim, and (3) proof of the infliction of an extremely painful act upon a living victim." (*People v. Jennings* (2010) 50 Cal.4th 616, 647.) By admitting the special circumstance as true, Arriaga admitted that she personally intended to kill Turney.

The record of conviction thus conclusively establishes that Arriaga is ineligible to be resentenced for three reasons. First, the charging document filed against Arriaga alleging that she committed first degree premeditated murder did not allow the prosecution to proceed under a now-invalid imputed malice theory. (See *People v. Reyes* (2023) 97 Cal.App.5th 292, 298 [defendant who pleaded no contest to second degree murder after Sen. Bill 1437's effective date not eligible for resentencing].) Second, Arriaga cannot establish that she could not presently be convicted of murder because of changes made by Senate Bill 1437 because she was *not* convicted under prior law. (*Reyes*, at p. 298; see also *People v. Lezama* (2024) 101 Cal.App.5th 583, 590 [resentencing relief unavailable to defendant who pleaded guilty to voluntary manslaughter after Sen. Bill 1437's effective date]; *People v. Gallegos* (2024) 105 Cal.App.5th 434, 443 [accord].) And third, she admitted the torture-murder special circumstance as true, establishing her intent to kill.

Arguing otherwise, Arriaga notes that she entered her plea before the Legislature enacted Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775), which made retroactive application of Senate Bill 1437's amendments to sections 188 and 189 more broadly available.[5] But Senate Bill 775 did not expand relief to those, like Arriaga, who were convicted of willful, deliberate and premeditated murder with the intent to kill.

---

[5] Senate Bill 775 "[c]larifie[d]" that resentencing relief was available to "persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine" just as to "those . . . convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a), p. 6971.)

Arriaga was not convicted based on any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a).) As we have explained, at the time Arriaga was charged and entered her plea (post-*Chiu*), there remained no valid theory of first degree premeditated murder based on imputed malice.

In sum, we find no error in the trial court's denial of Arriaga's petition for resentencing as she was not convicted of murder under a theory made invalid by Senate Bill 1437.[6]

### III.   DISPOSITION

The order denying Arriaga's petition for resentencing is affirmed.

---

[6] Because we find the trial court did not err in denying Arriaga's petition for resentencing, we need not address her claims that the denial of the petition violated her constitutional right to due process.

_____

LIE, J.

WE CONCUR:

_____

GREENWOOD, P. J.

_____

GROVER, J.

*People v. Arriaga*
H051594