[No. D049593. Fourth Dist., Div. One. Dec. 4, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
GABRIEL ALONZO ZACARIAS, Defendant and Appellant.

COUNSEL

David P. Lampkin for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rhonda Cartwright-Ladendorf and Annie Featherman Frazer, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BENKE, Acting P. J.—Gabriel Alonzo Zacarias was convicted of two counts of kidnapping for financial gain. (Pen. Code,[1] § 209, subd. (a).) He was sentenced to two concurrent terms of life imprisonment. Zacarias appeals, arguing instructional error concerning the theories of liability.

FACTS

A. *Prosecution Case*

Appellant and Nicholas Trujillo were in the business of transporting undocumented aliens. On March 16, 2004, appellant picked up Trujillo and two undocumented aliens in Temecula for delivery to their relatives at a

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

restaurant in Riverside. At the restaurant parking lot, Trujillo and one of the persons' relatives, Manuel Jaco, argued about the amount of money owed for the delivery. Appellant, still in the driver's seat of his van, was grabbed and punched. Appellant, with Trujillo and the two persons they were transporting still in the van, put the vehicle in reverse and drove backwards into another car. He then drove away with Jaco and another man in pursuit.

After approximately two miles, appellant's van stalled. Jaco approached the van and shot Trujillo once in the head. The two persons being transported got out of the van and left with Jaco. Trujillo died from his wound.

An expert on the smuggling of undocumented aliens testified that most of the fee for transporting them is paid before the smuggling occurs. Once in this country, they are kept in "load houses." They usually call relatives and arrange for the payment of the remainder of the fee. When the fee is paid, they are delivered to their relatives. Some smugglers, however, request more money for delivery than was originally agreed upon. In some cases the relatives do not have enough money to cover the increased fee. Under such circumstances, violence can occur.

Officers found a large amount of Mexican and Guatemalan cash in appellant's bedroom. In a hall closet they found 10 cell phones and a "pollo list," i.e., an accounting sheet bearing the names of smuggled undocumented aliens, the smuggling fee and the telephone number of relatives who are to make the final payment.

### B. *Defense Case*

The defense offered no witnesses. Counsel argued there was no evidence either appellant or Trujillo was holding the victims against their will. She argued appellant drove away, not meaning to hold the victims for ransom but to escape Jaco. Counsel argued that in any case, given the assault and appellant's claim that he saw a gun, he was not guilty because his actions were excused under the defense of necessity.

### DISCUSSION

#### *Conspiracy as a Theory of Liability*

Appellant notes the jury was offered three theories to support conviction for kidnapping for the purpose of financial gain. The theory at issue here is that

appellant was guilty of kidnapping for financial gain as a natural and probable consequence of a conspiracy between appellant and Trujillo to commit the federal crime of alien transportation. (8 U.S.C. § 1324(a)(1)(A)(ii).)[2] Appellant argues there can be no criminal conspiracy in California based on an agreement to commit an act that, while criminal under the law of another jurisdiction, is not a crime under California law, e.g., alien transportation.[3]

### 1. *Conspiracy to Transport Aliens*

Appellant notes that coconspirators are criminally liable not only for the conspiracy and, if committed, the offense targeted by the conspiracy but also for any offenses committed by a coconspirator that are the natural and probable consequence of the conspiracy. A criminal conspiracy exists when two or more persons conspire to *"commit any crime."* (§ 182, subd. (a)(1), italics added.) As used in the section, appellant asserts "any crime" means any crime *under California law*. The target crime alleged by the prosecution in this case for a finding of conspiracy and as the basis for making appellant liable for kidnapping for the purpose of financial gain was the federal crime of alien transportation. Alien transportation is not a crime under California law. Appellant concludes there was, therefore, no criminal conspiracy under California law and, thus, no basis for finding appellant vicariously liable for the kidnapping charges.

Appellant argues while the prosecution offered other theories for finding appellant guilty of the kidnapping charges, because the conspiracy theory was a legally insufficient basis for conviction, the guilty finding on the two kidnapping charges must be reversed. (See *People v. Perez* (2005) 35 Cal.4th 1219, 1232–1233 [29 Cal.Rptr.3d 423, 113 P.3d 100].)

### *Background*

Appellant was charged with two counts of kidnapping for financial gain. The jury was instructed concerning, and the prosecutor argued, three theories

---

[2] Title 8 United States Code section 1324(a)(1)(A)(ii) makes it a crime to knowingly "or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law."

[3] Respondent argues appellant has waived any claim on appeal that an agreement to commit a federal crime is not a conspiracy under section 182 because no objection was made on that basis below. Respondent concedes the waiver rule does not apply to instructional errors when "substantial rights" are affected. Respondent argues that because no error occurred in instructing concerning conspiracy as a theory of liability, appellant's substantial rights were not affected and there is no basis to ignore the waiver rule. The problem, of course, is that before we can decide whether the issue has been waived, we must decide its merit. (See *People v. Smithey* (1999) 20 Cal.4th 936, 976, fn. 7 [86 Cal.Rptr.2d 243, 978 P.2d 1171].)

supporting a finding of guilt. First, appellant directly committed kidnapping for financial gain. Second, even if he did not intend to commit a kidnapping, he nonetheless aided and abetted Trujillo in committing that offense. Third, appellant and Trujillo conspired to commit the federal crime of alien transportation. Coconspirators are criminally liable not only for the target offense of a conspiracy but also for the natural and probable consequence of acts done by other coconspirators to further the object of the conspiracy. The prosecutor argued kidnapping for financial gain was a natural and probable consequence of the conspiracy to transport aliens.

The prosecutor noted that kidnapping for the purpose of financial gain does not require asportation. He argued the victims ceased consenting to being in the van and were kidnapped for the purpose of financial gain when in the restaurant parking lot an argument arose over whether additional money would have to be paid before they were released and again when appellant drove away with them still in his van.

### 2. *Law*

Pursuant to section 182, subdivision (a)(1), the crime of conspiracy, a crime distinct from its target offense, occurs when two or more persons have the specific intent to agree to commit "*any crime*" (italics added), as well as the specific intent to commit the elements of the target crime and one or more of the parties commits an overt act in furtherance of the agreement. The act of one conspirator is the act of all. Each is responsible for everything done by his coconspirators, including those things that follow as the probable and natural consequence of the execution of the conspiracy. (*People v. Morante* (1999) 20 Cal.4th 403, 426–427 [84 Cal.Rptr.2d 665, 975 P.2d 1071].)

Conspiracy is an inchoate crime. It does not require the commission of the target offense. Because it is an inchoate crime, conspiracy fixes the point of legal intervention at the time of the agreement to commit a crime. (*People v. Morante, supra*, 20 Cal.4th at pp. 416–417.)

Application of the theory of vicarious liability for the commission of nontarget offenses does not require the underlying conspiracy be charged. (*People v. Belmontes* (1988) 45 Cal.3d 744, 788–789 [248 Cal.Rptr. 126, 755 P.2d 310]; *People v. Pike* (1962) 58 Cal.2d 70, 88 [22 Cal.Rptr. 664, 372 P.2d 656].)

Section 183 states: "No conspiracies, other than those enumerated in [section 182], are punishable criminally."

The crime of conspiracy exists for several reasons. An agreement to commit a crime increases the likelihood that a crime will be committed. The existence of a conspiracy facilitates the commission of more complex crimes. Crimes are more difficult to police and interdict when carried out by multiple parties. A conspiracy to commit a target offense makes it more likely that additional crimes related to the target offense will be committed. (*Callanan v. United States* (1961) 364 U.S. 587, 593–594 [5 L.Ed.2d 312, 81 S.Ct. 321]; *People v. Lee* (2006) 136 Cal.App.4th 522, 529 [38 Cal.Rptr.3d 927].)

### 3. *Discussion*

At issue is the meaning of the phrase "any crime" as used in section 182, subdivision (a)(1). The parties do not cite and we have found no case deciding whether an agreement to commit a federal crime is a conspiracy under section 182.

The Penal Code defines the terms "crime" and "public offense" and prescribes punishments for them. Section 15 defines a "crime" or "public offense" as "an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: [¶] 1. Death; [¶] 2. Imprisonment; [¶] 3. Fine; [¶] 4. Removal from office; or, [¶] 5. Disqualification to hold and enjoy any office of honor, trust, or profit in this State."

Section 16 states: "Crimes and public offense include: [¶] 1. Felonies; [¶] 2. Misdemeanors; and [¶] 3. Infractions."

Section 17, subdivision (a), states: "A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime or public offense is a misdemeanor except those offenses that are classified as infractions."

Section 19 states: "Except in cases where a different punishment is prescribed by any law of this state, every offense declared to be a misdemeanor is punishable by imprisonment in the county jail not exceeding six months, or by fine not exceeding one thousand dollars . . . , or by both."

Section 19.6 states in part: "An infraction is not punishable by imprisonment."

Section 19.7 states: "Except as otherwise is provided by law, all provisions of law relating to misdemeanors shall apply to infractions . . . ."

Taken alone, the general definition of the term "crime" in section 15 allows the conclusion that it applies not only to acts punishable under California law but under federal law as well. However, section 16 states that crimes are felonies, misdemeanors and infractions. The Penal Code classifies a crime as a felony or a misdemeanor or infraction based on whether it is punishable by imprisonment in *state prison* or *county jail* or by fine. (§§ 17, 18, 19, 19.6, 19.7.) This suggests that the term "crime" in section 16 was meant to apply only to acts punishable under California law.

There is little case law helpful to us concerning the meaning of the term "any crime" in section 182. In *Doble v. Superior Court* (1925) 197 Cal. 556 [241 P. 852] the defendants were charged with conspiracy under section 182 based on their agreement to commit felonious violations of California's Corporate Securities Act (Stats. 1917, ch. 532, § 1, p. 673). The act created crimes but was not part of the Penal Code. (*Doble v. Superior Court, supra,* 197 Cal. at pp. 557–560.) In 1925 section 182 made it a conspiracy to commit any felony punishable "in the same manner and to the same extent as *in this code provided* for the punishment of the commission of the said felony . . . ." (Stats. 1919, ch. 125, § 1, p. 170, italics added.)

The defendants noted that the felonies they were charged with agreeing to commit were not found in the *Penal Code* and argued section 182, therefore, provided no punishment for their alleged conspiracy. Because there was no punishment for conspiring to violate the Corporate Securities Act, the defendants claimed they could not be convicted of conspiracy. (*Doble v. Superior Court, supra,* 197 Cal. at pp. 559–563.)

As part of its resolution of the issue, the court stated: "We are of the opinion it was the legislative intention that the words 'any crime' should include all crimes—whether felonies or misdemeanors—which are known to the law of this state and whether defined and made punishable by the Penal Code or by any other law or statute of the state. . . . This construction of [the term 'any crime' in section 182] would seem to be the only logical one in view of the express terms of section 15, 16, and 17 of the Penal Code. It is obvious from even the most casual reading of section 15 that the legislature

by its definition of 'crime' intended all acts or omissions in contravention of *any* law of the state, whether included in the Penal Code or not, and to which would attach the prescribed penalties. It must therefore be held, especially in view of the interpretation of the term 'crime' in section 16, that the legislature employed the word in that sense in [section 182]. By no rule of interpretation can the word be held to be limited to offenses provided for in the Penal Code." (*Doble v. Superior Court, supra,* 197 Cal. at p. 565.)

While *Doble* did not consider the precise issue of whether a federal crime is "any crime" within the meaning of section 182, it nonetheless supports the conclusion that "any crime" for the purposes of California conspiracy law means a crime as defined by the law of California and not by another jurisdiction. We think it is meaningful also that we can find no case and are unaware of any California conspiracy prosecution based on the agreement to commit a federal crime.

■ We conclude that the term "any crime" as used in section 182 refers only to crimes created by California law.

As noted, conspiracy is not only a crime in California, it is also a theory of vicarious criminal liability. Thus, members of a conspiracy are criminally responsible not only for the target crime, if it is committed, and the crime of conspiracy but also for any crimes that are the natural and probable consequences of the execution of the conspiracy. The question that arises is whether this theory of vicarious liability exists independent of the crime of conspiracy created by section 182, i.e., can a person be convicted of a California crime that is the natural and probable consequence of the conspiracy to commit a federal crime?

■ Again, we find no case authority addressing the issue. We conclude that the vicarious liability doctrine applicable to conspiracies exists to extend the liability of those who are guilty of conspiracies to commit California crimes and not to commit federal crimes. As noted it is unnecessary to charge the crime of conspiracy in order to convict a defendant of a crime as the natural and probable consequence of a conspiracy. Still, the underlying conspiracy must be proved and there is no authority for the proposition that that conspiracy can be one that could not be charged and proved under section 182. It would be odd, we think, for a defendant to be vicariously liable for a serious California crime based on an agreement that is not criminal under California law.

■ Because we cannot determine whether the jury relied on one of the legally viable theories on which it was instructed or on the legally defective conspiracy theory, the judgment must be reversed. (*People v. Perez, supra,* 35 Cal.4th at pp. 1232–1233; *People v. Guiton* (1993) 4 Cal.4th 1116, 1130 [17 Cal.Rptr.2d 365, 847 P.2d 45].)

The judgment is reversed.

Nares, J., and Aaron, J., concurred.

A petition for a rehearing was denied December 19, 2007, and respondent's petition for review by the Supreme Court was denied March 19, 2008, S159965. Baxter, J., Werdegar, J., and Chin, J., were of the opinion that the petition should be granted.