Filed 1/31/24  P. v. Carter CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D081412 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD208826) |
| JAMES LIONEL CARTER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Kenneth K. So, Judge.  Affirmed.

Eric Multhaup, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Lynne G. McGinnis and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

James Lionel Carter appeals the order denying his petition for resentencing on murder and attempted murder convictions.  He contends the

trial court erroneously denied the petition at the prima facie review stage because the jury might have found him guilty under the natural and probable consequence doctrine. We conclude the record of conviction shows the jury did not find him guilty under that doctrine and affirm the denial order.

## I.

## BACKGROUND

A.   *Shooting*

Members of a rival criminal street gang killed a member of Carter's gang and injured another in a drive-by shooting. The following day, Carter and other members of his gang retaliated by arming themselves with firearms, driving to a location where rival gang members were known to gather, and opening fire. Two bystanders were killed, and another bystander and three rival gang members were wounded. (*People v. Carter* (Apr. 29, 2013, D060328) [nonpub. opn.].)

B.   *Criminal Proceeding*

A grand jury indicted Carter for conspiracy to commit murder by locating, shooting, and killing rival gang members (Pen. Code, §§ 182, subd. (a)(1), 187, subd. (a); subsequent undesignated section references are to this code), two counts of murder (§ 187, subd. (a)), and four counts of willful, deliberate, and premeditated attempted murder (§§ 21a, 187, subd. (a), 189). Each count included an allegation Carter committed the crime for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (§ 186.22, subd. (b)); and in the commission of the crime personally and intentionally discharged a firearm causing great bodily injury or death to a person other than an accomplice (§ 12022.53, subd. (d)). The murder counts included special circumstance allegations that Carter committed multiple

murders and intentionally killed the victims while he was an active participant in a criminal street gang to further the activities of the gang. (§ 190.2, subd. (a)(3), (22).) The indictment also included allegations Carter had served a prior prison term (former § 667.5, subd. (b)) and had a prior conviction that constituted a strike under the "Three Strikes" law (§§ 667, subds. (a)–(i), 1170.12).

The case proceeded to a jury trial. The court instructed the jury on the specific charges and allegations and on accomplice liability. The instructions most pertinent to this appeal are summarized below.

The trial court instructed the jury that to find Carter guilty of conspiracy to commit murder, "[t]he People must prove that the members of the alleged conspiracy had an agreement and intent to commit murder." (CALCRIM No. 563.) More specifically, the People had to prove: (1) Carter intended to agree and did agree with other members of his gang intentionally and unlawfully to kill; (2) at the time of the agreement, he or a coconspirator intended that one or more of them would intentionally kill; and (3) he or a conspirator committed at least one specified overt act in California to accomplish the killing. (*Ibid.*)

The trial court gave the jury instructions on two theories of first degree murder: (1) the murder was willful, deliberate, and premeditated; and (2) the murder was perpetrated by means of discharging a firearm from a motor vehicle. (CALCRIM No. 521; see § 189, subd. (a).) The first theory required the People to prove "[t]he defendant . . . intended to kill"; "carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill"; and "decided to kill before completing the acts that caused death." The second theory required the People to prove "[t]he defendant" "shot a firearm or aided and abetted a shooting from a motor vehicle,"

3

"intentionally shot at a person or aided and abetted shooting a person who was outside the vehicle," and "intended to kill that person."

On the attempted murder charges, the trial court instructed the jury the People had to prove "[t]he defendant took at least one direct but ineffective step toward killing another person," and "[t]he defendant intended to kill that person." (CALCRIM No. 600.) The court instructed the jury that "[t]he attempted murder was done willfully and with deliberation and premeditation if either the defendant or other attempted murderers or any of them acted with that state of mind." (CALCRIM No. 601.)

The trial court gave the standard instruction on transferred intent: "If the defendant intended to kill one person, but by mistake or accident killed someone else instead, then the crime, if any, is the same as if the intended person had been killed." (CALCRIM No. 562.)

The trial court also advised the jury the People had presented evidence of an uncharged conspiracy to commit assault with a firearm. To establish that conspiracy, the People had to prove Carter intended to agree and did agree with other members of his gang to commit assault with a firearm; at the time of the agreement, he or a coconspirator intended that one or more of them would commit assault with a firearm; and he or a coconspirator committed a specified overt act in California to accomplish assault with a firearm. (CALCRIM No. 416.) The court separately instructed the jury on the elements of assault with a firearm, which included that "[a] perpetrator" willfully did an act with a firearm that naturally, probably, and directly would result in application of force to a person. (CALCRIM No. 875.)

The trial court instructed the jury on two theories of accomplice liability: (1) aiding and abetting and (2) conspiracy. The aiding and abetting instructions advised the jury "[a] person is guilty of a crime whether he or she

4

committed it personally or aided and abetted the perpetrator"; and "[s]omeone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." (CALCRIM Nos. 400, 401.) The court generally instructed the jury a conspirator is criminally responsible for the crimes he conspires to commit no matter which member of the conspiracy commits them, and also for any act of a member of the conspiracy that is a natural and probable consequence of the conspiracy and is done to further the conspiracy. (CALCRIM No. 417.) It more specifically instructed the jury that to find Carter guilty of the murder and attempted murder charges, the People had to prove either those charges or that he conspired to commit assault with a firearm or murder, a member of the conspiracy committed assault with a firearm or murder, and the completed crimes of murder and attempted murder were natural and probable consequences of the common plan or design of the crime he conspired to commit. (CALCRIM No. 417.)

The jury found Carter guilty of conspiracy to commit murder, two counts of first degree murder, and three counts of willful, deliberate, and premeditated attempted murder. It found true the gang and firearm allegations attached to those charges, and found true both special circumstance allegations attached to the murder charges. The jury did not reach a verdict on the charge of attempted murder of the bystander, which the court dismissed on motion by the People.

At a bench trial on the recidivism allegations, the court granted the People's motion to dismiss the prior prison term allegation and found Carter had a prior strike conviction. The court later sentenced him to prison for 25 years to life plus a doubled term of life without the possibility of parole for

5

each murder; a consecutive term of 75 years to life for conspiracy to commit murder; and consecutive terms of 55 years to life each for the attempted murders. On Carter's appeal, this court affirmed the judgment. (*People v. Carter, supra*, D060328.)

C.      *Section 1172.6 Proceeding*

After Carter's judgment became final, legislation narrowed the scope of liability for felony murder and abolished liability for murder under the natural and probable consequences doctrine. (§§ 188, 189, as amended by Stats. 2018, ch. 1015, §§ 2, 3, eff. Jan. 1, 2019; see *People v. Gentile* (2020) 10 Cal.5th 830, 842–843, 846 (*Gentile*).) The legislation enacted former section 1170.95, which established a procedure for persons to seek relief if they had been convicted of murder before the legislation took effect but could not have been convicted had the legislation been in effect at the time of the killing. (Stats. 2018, ch. 1015, § 4; see *Gentile*, at p. 843.) The Legislature later amended section 1170.95 to expand the scope of persons eligible for relief to include those convicted of "attempted murder under the natural and probable consequences doctrine." (Former § 1170.95, subd. (a), as amended by Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.) The procedure is now codified as section 1172.6. (Stats. 2022, ch. 58, § 10; see *People v. Wilson* (2023) 14 Cal.5th 839, 869, fn. 9 (*Wilson*).) We use that statutory number for simplicity.

Pursuant to the procedure now codified as section 1172.6, Carter filed a form petition for resentencing in the trial court. He alleged the indictment allowed prosecution for murder or attempted murder under the natural and probable consequences doctrine, he was convicted of murder or attempted murder, and he could not presently be convicted of murder or attempted

6

murder because of the changes to sections 188 and 189 that took effect on January 1, 2019.  He also requested appointment of counsel.

The court appointed counsel for Carter.  The People filed a response to the petition in which they argued Carter was ineligible for relief because the record of conviction established he was the actual killer or an aider and abettor who acted with intent to kill.  They attached to their response copies of the indictment, the jury instructions, the verdicts, the sentencing minutes, and this court's opinion on Carter's appeal of the judgment.  The trial court held a prima facie review hearing, ruled Carter had not stated a prima facie case for relief, and denied the petition.

## II.

## DISCUSSION

Carter contends that because liability for murder or attempted murder under the natural and probable consequences doctrine was eliminated by the amendments to sections 188 and 189 that took effect on January 1, 2019, and the jury could have found the murders and attempted murders were natural and probable consequences of an uncharged conspiracy to commit assault with a firearm in which he participated, the trial court erred by denying his resentencing petition at the prima facie review stage.  He further contends none of the verdicts shows the jury found he acted with a specific intent to kill at the time of the murders and attempted murders of which the jury found him guilty, a finding he says the amendments to sections 188 and 189 require for those convictions.  Carter asks us to reverse the order denying his petition and to remand the matter with directions to the trial court to issue an order to show cause and to hold an evidentiary hearing.  As we shall explain, Carter is not entitled to that relief.

Section 1172.6 provides a procedural mechanism for those convicted of murder or attempted murder under prior law to seek retroactive relief based on the amendments to sections 188 and 189 that took effect on January 1, 2019. (*Wilson, supra*, 14 Cal.5th at p. 869.) At the prima facie review stage, a court presented with a resentencing petition may not engage in factfinding or weighing of evidence, but may consider the jury instructions, verdicts, opinion on appeal, and other documents that are part of the record of conviction to decide whether the petitioner satisfies the conditions for relief. (§ 1172.6, subd. (c); *People v. Lewis* (2021) 11 Cal.5th 952, 970–972 (*Lewis*); *People v. Allen* (2023) 97 Cal.App.5th 389, 395 & fn. 4 (*Allen*); *People v. Flores* (2023) 96 Cal.App.5th 1164, 1170.) If the record of conviction shows the petitioner was convicted on a theory of liability that remains valid after the amendments to sections 188 and 189 took effect on January 1, 2019, the petitioner is ineligible for relief. (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 936–937; *Allen*, at p. 395.) We review de novo a trial court's ruling the petitioner did not state a prima facie case for relief under section 1172.6. (*Allen*, at p. 395; *Flores*, at p. 1170.)

One of the conditions Carter must satisfy to state a prima facie case for relief is that he "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3); see *People v. Curiel* (2023) 15 Cal.5th 433, 461 [§ 1172.6, subd. (a)(3) allegation "is part of the prima facie showing a petitioner must make in order to proceed to an evidentiary hearing"].) The change relevant to his convictions is the addition of subdivision (a)(3) to section 188. (Stats. 2018, ch. 1015, § 2.) Under that provision, except in cases of felony murder, "to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based

8

solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Before the amendment, an accomplice to another crime that resulted in a murder or attempted murder could be convicted of a murder or attempted murder that was a natural and probable consequence of the other crime, even though the accomplice did not personally harbor malice aforethought. (*Gentile, supra*, 10 Cal.5th at p. 845; *People v. Montes* (2021) 71 Cal.App.5th 1001, 1007–1008.)[1]  Because section 188, subdivision (a)(3), prohibits imputation of malice based solely on participation in a crime, the natural and probable consequences doctrine no longer can be used to find an accomplice guilty of murder or attempted murder. (*Gentile*, at p. 846; *People v. Sanchez* (2022) 75 Cal.App.5th 191, 196.)  Hence, if Carter might have been convicted of murder or attempted murder based on that doctrine, he stated a prima facie case and would be entitled to an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at p. 971; *Montes*, at p. 1007.)

The record of conviction shows the jury did not find Carter guilty of murder under the natural and probable consequences doctrine even though it was instructed it could find him guilty of a murder that was a natural and probable consequence of an uncharged conspiracy to commit assault with a firearm in which he participated. (See CALCRIM Nos. 416, 417.)  We know this because the jury found Carter guilty of the charged conspiracy to commit murder by locating, shooting, and killing rival gang members.  That verdict established he had an unlawful intent to kill (i.e., express malice) and the

---

1  The natural and probable consequences doctrine "imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense.  [Citation.]  Because the nontarget offense is unintended, the mens rea of the [accomplice] with respect to that offense is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the commission of the nontarget crime." (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 852.)

intended, target crime was deliberate and premeditated first degree murder. (*People v. Ware* (2022) 14 Cal.5th 151, 167 (*Ware*); *People v. Medrano* (2021) 68 Cal.App.5th 177, 183 (*Medrano*)). By finding Carter guilty of conspiracy to murder, the jury could not have found him guilty of murder based on the natural and probable consequences doctrine, which applies only to unintended, nontarget offenses. (*Medrano*, at p. 185; see fn. 1, *ante*.)[2] We also know Carter was the actual killer or a direct aider and abettor who acted with malice, because as to each murder the jury found he "intentionally and personally discharge[d] a firearm and proximately cause[d] great bodily injury and death to a person (other than an accomplice)," and "intentionally killed the victim while [he] was an active participant in a criminal street gang . . . to further the [gang's] activities." Because such a participant in a killing remains liable for murder after sections 188 and 189 were amended on January 1, 2019, he is ineligible for resentencing on the murder convictions. (*Allen, supra*, 97 Cal.App.5th at pp. 395–396 [conspirator]; *People v. Estrada* (2022) 77 Cal.App.5th 941, 945 [direct aider and abettor]; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58 [actual killer].)

We reach the same conclusion as to the attempted murder convictions. Section 1172.6 authorizes resentencing on an attempted murder conviction only if it was based on the natural and probable consequences doctrine. (§ 1172.6, subd. (a); *People v. Coley* (2022) 77 Cal.App.5th 539, 548.) As we have explained, the jury found Carter guilty of conspiring with fellow gang members to locate, shoot, and kill rival gang members, and that finding

---

[2] That the murder victims were bystanders and not rival gang members does not alter this conclusion. Under the transferred intent doctrine, on which the jury was instructed (CALCRIM No. 562), "if a defendant intended to kill A but inadvertently killed B, the intent to kill A is deemed to transfer to the killing of B, so that the defendant is guilty of B's murder." (*People v. Mumin* (2023) 15 Cal.5th 176, 190.)

required the jury find he intended to kill them. (*Ware, supra*, 14 Cal.5th at p. 167; *Medrano, supra*, 68 Cal.App.5th at p. 183.) By finding he conspired to murder rival gang members, the jury could not have found him guilty of attempting to commit the intended, target crime of murder based on the natural and probable consequences doctrine, which applies only to unintended, nontarget crimes. (*Allen, supra*, 97 Cal.App.5th at pp. 396–397; *Medrano*, at p. 185; see fn. 1, *ante*.) Moreover, as to each conviction the jury found the attempted murder was "willful, deliberate and premeditated"; Carter "intentionally and personally discharge[d] a firearm and proximately cause[d] great bodily injury and death to a person (other than an accomplice)"; and he committed the crime "for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further or assist in criminal conduct by gang members." The conspiracy and attempted murder verdicts thus establish Carter directly participated in each attempted murder with intent to kill. He is therefore ineligible for resentencing on the attempted murder convictions under section 1172.6. (*Allen*, at pp. 395–396 [conspirator]; *Coley*, at p. 548 [direct aider and abettor]; *People v. Cortes* (2022) 75 Cal.App.5th 198, 204 [direct perpetrator or direct aider and abettor].)

Carter contends we cannot rely on the verdict finding him guilty of conspiracy to commit murder to conclude the jury necessarily found he harbored malice aforethought as to the murders and attempted murders of which he was convicted. He argues the conspiracy instruction required the People to prove he had an intent to kill at the time of the agreement, not at the time of the commission of the murders and attempted murders; and, he says, nothing in the other verdicts shows he personally acted with malice when those crimes were committed. We disagree.

11

The trial court instructed the jury that to find Carter guilty of conspiracy to commit murder, the People had to prove he agreed with other gang members intentionally and unlawfully to kill, and at the time of the agreement he and one or more of the other gang members intended that one or more of them would intentionally and unlawfully kill. (CALCRIM No. 563.) Intent to kill at the time the agreement was formed was needed because "conspiracy fixes the point of legal intervention at the time of the agreement to commit a crime." (*People v. Zacarias* (2007) 157 Cal.App.4th 652, 657.) That intent did not go away immediately afterwards. The "agreement is a continuous act; thus conspiracy is said to be a continuing crime." (*People v. Von Villas* (1992) 11 Cal.App.4th 175, 244.) "The conspiracy once established will be presumed to continue until the ends are accomplished or its abandonment is established." (*People v. Chait* (1945) 69 Cal.App.2d 503, 514; see *People v. Cooks* (1983) 141 Cal.App.3d 224, 316 ["Once the defendant's participation in the conspiracy is shown, it will be presumed to continue unless he is able to prove, as a matter of defense, that he effectively withdrew from the conspiracy."].) We know Carter did not withdraw from the conspiracy before its object was accomplished because as to each murder and attempted murder the jury found he "intentionally and personally discharge[d] a firearm and proximately cause[d] great bodily injury and death to a person (other than an accomplice)." He thus clearly manifested continued agreement with fellow gang members intentionally and unlawfully to kill when the murders and attempted murders were committed.

## III.

## DISPOSITION

The order denying the petition for resentencing is affirmed.

12

                                                    IRION, Acting P. J.

WE CONCUR:


DATO, J.


BUCHANAN, J.