Filed 6/23/25  P. v. Cook CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099710 |
| Plaintiff and Respondent, | (Super. Ct. No. 95F09217) |
| v. | |
| MATTHEW COOK et al., | |
| Defendants and Appellants. | |

Defendants Matthew Cook and Darrion Gains appeal from the trial court's denial of their Penal Code section 1172.6 petitions.  (Statutory section citations that follow are found in the Penal Code unless otherwise stated.)  Defendants originally filed their petitions under former section 1170.95.  Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6 without substantive changes.  (Stats. 2022, ch. 58, § 10.)  We will cite to the current section throughout this opinion.

1

Defendants contend the trial court's conclusion that they could still be liable for murder and attempted murder as direct aiders and abettors was precluded by the jury's verdicts at trial. Gains also argues the court erred in considering inculpatory statements he made to a Department of Corrections (CDCR) psychologist in preparation for a parole suitability hearing. Finding no merit to these contentions, we affirm the trial court's orders.

FACTS AND HISTORY OF THE PROCEEDINGS

In 1998, the People charged Cook, Gains, and codefendants Anthony Lozo and Kenneth Bolds with conspiracy to commit murder (§ 182); the murder of J.F. (§ 187, subd. (a)); the deliberate and premeditated attempted murder of C.K. (§§ 187, subd. (a), 664); and burglary (§ 459). As to each offense Cook and Gains were charged with, the People alleged that a principal was armed in the commission of the offense (§ 12022, subd. (a)). The People also alleged that Cook and Gains had each served a prior prison term (§ 667.5, subd. (b)).

At trial, the People introduced evidence that, several days prior to October 16, 1995, Cook, Gains, Lozo, C.K. and J.F. were involved in an incident at a grocery store in which J.F. or C.K. hit Cook with a gun and Lozo had money stolen from him. Following the incident, Cook, Gains, and Lozo discussed getting revenge.

On October 16, 1995, Cook bought a gun and told his brother's girlfriend that he planned to use it for revenge. That night, Cook, Gains, Lozo, Bolds, and Jose Gomez went to the victims' apartment. Cook, Gains, and Lozo wore ski caps as masks; Lozo had the gun Cook purchased earlier that day. As they approached the victims' door, Bolds and Gomez ran away after seeing someone with a gun inside. Lozo went into J.F.'s bedroom, said, "Die, mother fucka, die," and shot J.F. in the chest and stomach, killing him. The three then went to C.K.'s bedroom where Lozo shot C.K., who survived.

2

As to the conspiracy charge, the trial court instructed the jury as follows: "A conspiracy is an agreement entered into between two or more persons with the specific intent to agree to commit the charged offense and with the further specific intent to commit that crime, followed by an overt act committed by one or more of the parties for the purpose of accomplishing the object of the agreement. . . . [¶] In this case the information charged conspiracy to commit murder. If you are not satisfied beyond a reasonable doubt that a defendant is guilty of conspiracy to commit murder, you may nevertheless convict him of a lesser crime, if you are convinced beyond a reasonable doubt that the defendant is guilty of the lesser crime. [¶] The crime of conspiracy to commit an assault with a firearm is lesser to that of conspiracy to commit murder. . . . [¶] . . . [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. Two or more persons entered into an agreement to kill unlawfully another human being or to commit an assault with a firearm; [¶] 2. At least two of the persons specifically intended to enter into an agreement with one or more other persons for that purpose; [¶] 3. At least two of the persons to the agreement harbored express malice aforethought, namely a specific intent to kill unlawfully another human being or had the specific intent to commit an assault with a firearm; [¶] 4. An overt act was committed in this state by one or more of the persons who agreed and intended to commit murder or who agreed and intended to commit an assault with a firearm."

The jury found Cook and Gains not guilty of conspiracy to commit murder but guilty of the lesser included offense of conspiracy to commit assault with a firearm. The jury further found Cook and Gains guilty of first degree murder, attempted murder, and first degree burglary. As to each offense, the jury found true that during the commission of the offense, one or more principals was armed with a firearm under section 12022, subdivision (a). As to the attempted murder, the jury found it was committed with deliberation and premeditation.

The trial court sentenced Cook and Gains to 25 years to life for murder, life with the possibility of parole for the attempted murder, four years (the upper term) for the conspiracy to commit assault, and six years (the upper term) for the burglary. The court also imposed four one-year terms for each of the firearm enhancements and one year for a prior prison term under section 667.5. The court stayed the sentences for the conspiracy and burglary (and the associated firearm enhancements) pursuant to section 654. On direct appeal, we vacated defendants' sentences for the prior prison term enhancements because the prior prison term allegations had not been properly proven. (*People v. Cook et al.* (Aug. 22, 2001, C030492) [nonpub. portion of partially pub. opn.].) We affirmed the judgment in all other respects. (*Ibid*.)

In 2019, defendants Cook and Gains petitioned for resentencing pursuant to section 1172.6, arguing they could no longer be convicted of first degree murder and attempted murder given the legislative changes to murder liability. The trial court issued an order to show cause and set an evidentiary hearing.

Prior to the hearing, the trial court admitted into evidence the transcripts from defendants' original trial. The People also moved to admit into evidence statements Gains made in 2016 to a CDCR psychologist in a comprehensive risk assessment prepared for parole suitability proceedings. As part of that statement, Gains said: "We agreed to retaliate. I supported it. I went with Lozo to shoot [C.K.]. The door was kicked in. We went in and Lozo shot [J.F.] who died. Then we left." Gains did not object to this evidence and the court admitted it.

Defense counsel argued, among other things, that by finding defendants not guilty of conspiracy to commit murder but guilty of conspiracy to commit assault with a firearm, the jury found that defendants did not intend to kill. The prosecutor responded that these verdicts did not mean that the jury found there was no intent to kill. The trial court agreed with the prosecutor.

4

The trial court ultimately denied the petitions, explaining that the evidence established beyond a reasonable doubt that both defendants would still be guilty of the murder of J.F. and the attempted murder of C.K. as direct aiders and abettors.

Defendants timely appealed.

DISCUSSION

I

*Issue Preclusion*

Defendants argue the trial court erred in concluding they would still be guilty of murder and attempted murder as direct aiders and abettors. In their view, because the jury found them not guilty of conspiracy to commit murder but guilty of conspiracy to commit assault with a firearm, the jury established that defendants lacked the intent to kill. Under the doctrine of collateral estoppel, the argument goes, this jury determination precluded the trial court from finding at the section 1172.6 evidentiary hearing that defendants would still be liable as direct aiders and abettors.

"In general, whether a prior finding will be given conclusive effect in a later proceeding is governed by the doctrine of issue preclusion, also known as collateral estoppel. [Citations.] This common law doctrine is 'grounded on the premise that "once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." ' " (*People v. Strong* (2022) 13 Cal.5th 698, 715.) "As traditionally understood and applied, issue preclusion bars relitigation of issues earlier decided 'only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' " (*Id.*

5

at p. 716.) " 'In considering whether these criteria have been met, courts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts." ' " (*People v. Curiel* (2023) 15 Cal.5th 433, 452.) "The party asserting collateral estoppel bears the burden of establishing these requirements." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.)

In support of their argument, defendants rely principally on *People v. Cooper* (2022) 77 Cal.App.5th 393. There, the trial court considered the preclusive effect of a prior jury finding at a section 1172.6 evidentiary hearing. (*Cooper*, at p. 412.) The jury had found the defendant guilty of first degree murder but acquitted him on the charge of being a felon in possession of a firearm—even though the defendant had stipulated to being a convicted felon. (*Id*. at p. 399.) At his section 1172.6 evidentiary hearing, the trial court concluded the defendant could still be found guilty of murder because he was a major participant in the underlying felony who acted with reckless indifference to human life. (*Cooper*, at p. 408.) In reaching that conclusion, the trial court "made numerous statements to the effect that Cooper possessed and fired a gun on the day in question." (*Ibid*.)

On appeal, the defendant argued the doctrine of collateral estoppel precluded the trial court from relying on his possession of a gun to reach its conclusion. (*Cooper*, *supra*, 77 Cal.App.5th at p. 412.) The appellate court ultimately did not apply the doctrine of collateral estoppel as it was "not clear whether collateral estoppel principles apply in section [1172.6] proceedings" because " 'double jeopardy principles are not at stake.' " (*Cooper*, at pp. 412-413.) Nonetheless, the court concluded, based on caselaw in analogous resentencing contexts, that "a trial court cannot deny relief in a section [1172.6] proceeding based on findings that are inconsistent with a previous acquittal when no evidence other than that introduced at trial is presented." (*Cooper*, at p. 398.) Given this, the court determined that the defendant's "acquittal of the firearm-possession count 'constituted [a] finding[] inconsistent with' the trial court's theory that he was a

6

major participant . . . who acted with reckless indifference to human life." (*Id*. at pp. 416-417; see *id*. at p. 412 [explaining that the jury's not-true finding meant that "any evidence [Cooper] possessed or used a gun should not have played a role in the court's analysis"].)

Under either traditional collateral estoppel principles or the approach applied in *Cooper*, defendants' claim fails because the jury did not find that defendants lacked the intent to kill. In finding defendants not guilty of conspiracy to commit murder, the jury could have concluded that defendants and Lozo simply never entered into an agreement to commit murder—even if defendants individually harbored an intent to kill when the conspiracy formed. Alternatively, it is possible the jury thought that defendants only intended to assault the victims when they entered into the conspiracy but that this ripened into an intent to kill as the attack played out. (See *People v. Zacarias* (2007) 157 Cal.App.4th 652, 657 ["conspiracy fixes the point of legal intervention at the time of the agreement to commit a crime"].)

For these reasons, the jury did not "establish" that defendants lacked the intent to kill by finding defendants not guilty of conspiracy to commit murder but guilty of conspiracy to commit assault with a firearm. This means that, under collateral estoppel principles, the issue of defendants' intent was not "necessarily decided" at their trial. It also means that, under the analysis in *Cooper*, the jury's findings were not inconsistent with the trial court's determination at the section 1172.6 evidentiary hearing that defendants were direct aiders and abettors of the murder and attempted murder.

II

*Admission of Inculpatory Statements*

Gains contends the trial court erred in considering the inculpatory statements he made that were included in a comprehensive risk assessment for parole suitability proceedings. More specifically, Gains argues that: (1) the statements should have been

7

excluded as involuntary; (2) he should have been granted use immunity from those statements under *People v. Coleman* (1975) 13 Cal.3d 867; and (3) reliance on these statements is "fundamentally unfair" in numerous respects.  The People correctly argue that this claim is forfeited as Gains failed to object to the admission of the statements in the trial court.  (See *People v. Anderson* (2001) 25 Cal.4th 543, 586 ["[A] challenge to the admission of evidence is not preserved for appeal unless a specific and timely objection was made below"]; Evid. Code, § 353.)

Anticipating this conclusion, Gains argues his trial counsel was ineffective by not objecting on this basis.

To establish a claim for ineffective assistance of counsel, defendant must show his counsel's performance was deficient and that he suffered prejudice as a result.  (*People v. Mickel* (2016) 2 Cal.5th 181, 198; *Strickland v. Washington* (1984) 466 U.S. 668, 687-692.)  If either element is missing, the defendant's claim of ineffective assistance fails.  (*Strickland*, at p. 697.)

Here, Gains cannot establish deficient performance by his trial counsel because any objection would have lacked merit.  At the time the trial court admitted the evidence, appellate courts had uniformly held that statements made in the context of parole suitability proceedings were admissible in section 1172.6 hearings.  (See *People v. Myles* (2021) 69 Cal.App.5th 688, 697-706; *People v. Anderson* (2022) 78 Cal.App.5th 81, 88-93; *People v. Duran* (2022) 84 Cal.App.5th 920, 927-932; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 586-590; *id*. at p. 590 ["Mitchell contends it is unfair to use his own words against him.  What is the unfairness, exactly? . . . [I]t is fair and indeed sensible to say a convicted person's own words are pertinent when that person petitions for the benefit of resentencing"].)

Since then, this court considered the issue in *People v. Zavala* (2024) 105 Cal.App.5th 366 and agreed with our sister courts of appeal that "*Coleman* use immunity should not be extended to bar the use of a defendant's statements in a

comprehensive risk assessment and testimony at a parole hearing in a later evidentiary hearing held under section 1172.6." (*Id*. at p. 374.) We also rejected the argument that such statements are inherently involuntary. (*Id*. at pp. 376-378.) In so holding, we acknowledged that "a defendant may face various pressures or competing incentives at a parole hearing. Thus, there may be case-specific circumstances that warrant a closer review to determine if such incentives rise to the level of coercion rendering parole hearing testimony involuntary." (*Id*. at p. 377.) But the defendant there had not raised "any case-specific facts warrant[ing] such a conclusion," arguing instead "that the mere fact that his statements and testimony were given in the context of a parole hearing should justify a finding that they were involuntary." (*Ibid*.) As such, we concluded that the defendant had "not shown that either his statements in the comprehensive risk assessment or his parole hearing testimony were involuntary or coerced, such that they should have been excluded as inadmissible at the time of the evidentiary hearing on his section 1172.6 petition." (*Ibid*.)

Gains urges us to reject the weight of published authority on this issue and reconsider our decision in *Zavala*. We decline to do so. And as with the defendant in *Zavala*, Gains has pointed to no case-specific facts compelling the conclusion that his statements were involuntary or coerced. For these reasons, we conclude that any objection to this evidence would have been without merit and thus trial counsel did not perform deficiently by not objecting to its admission. (See *People v. Lucero* (2000) 23 Cal.4th 692, 732 [" 'Counsel may not be deemed incompetent for failure to make meritless objections' "].)

9

DISPOSITION

The postjudgment order denying defendants' section 1172.6 petitions is affirmed.

_____

HULL, Acting P. J.

We concur:

_____

MAURO, J.

_____

DUARTE, J.

10